**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AFTERSCHOOL FOR CHILDREN AND TEENS NOW (ACT NOW) COALITION and METROPOLITAN FAMILY SERVICES<br><br>     Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION and LINDA McMAHON, in her official capacity as Secretary, U.S. Department of Education,<br><br>     Defendants. | Case No. 25-cv-15704<br><br>**COMPLAINT** |

## **INTRODUCTION**

1.      This action challenges an unprecedented and unlawful decision by the United States Department of Education to discontinue two previously awarded, multi-year federal grants based not on grantee performance, statutory criteria, or regulatory standards, but on perceived misalignment with the current Administration's policy preferences and priorities.

2.      Acting just 19 days before the close of the current budget period, the Department issued Notices of Non-Continuation (Notices) that notified Plaintiffs that they would not be receiving continuation awards for their two Full-Service Community Schools (FSCS) grants, despite the continued availability of appropriated funds and Plaintiffs' full compliance with all programmatic and fiscal requirements.

3.      Just two days before the close of the current budget period, the Department issued letters denying Plaintiffs' request for reconsideration of its two grants.

4.      These FSCS programs serve thousands of students across Illinois through partnerships with school districts and community organizations.

5.      Congress created the FSCS program to support stable, multi-year investments in integrated academic, health, and community services for students in high-need schools. The governing statutes and regulations strictly limit the circumstances under which the Department may deny continuation funding for approved projects, tying those decisions to grantee performance, compliance, and progress toward established objectives.

6.      The Department's decision here departed from that framework entirely. Rather than identifying any deficiencies in Plaintiffs' performance or administration of the grants, the Department cited excerpts from Plaintiffs' approved grant applications—language unrelated to how the grant was actually carried out—and concluded that the programs reflected policy

2

priorities of a prior Administration and, solely on the basis of the applications, no longer served the "best interest of the Federal Government."

7.      That rationale finds no support in the statute, the regulations, or the published terms of the fiscal year (FY) 2023 competition under which Plaintiffs' applications were reviewed, scored, and awarded. By retroactively conditioning continuation funding on compliance with unpublished and newly articulated policy preferences, the Department acted arbitrarily and capriciously, misinterpreted its own regulations, and exceeded the authority delegated to it by Congress. The Department further penalized Plaintiffs for complying with statutory requirements imposed by Congress itself, including mandatory assurances under the General Education Provisions Act (GEPA), converting compliance into grounds for funding denial.

8.      Absent immediate judicial intervention, Plaintiffs will be forced to dismantle active community school programs mid-school year, terminate staff, sever partnerships with school districts and community organizations, and disrupt services relied upon by approximately 19,000 students statewide. These harms are concrete, imminent, and irreparable.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Constitution and laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §§ 701–06, and federal statutes and regulations governing the administration of federal education grants. This Court also has authority to grant declaratory and injunctive relief under Federal Rule of Civil Procedure 65.

10.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and (e)(1) because Plaintiffs ACT Now and Metropolitan Family Services reside and conduct business in this

District, a substantial part of the events or omissions giving rise to the claims occurred here and continue to occur within the District, and Defendants are officers and agencies of the United States acting in their official capacities.

## PARTIES

11.     Plaintiff Metropolitan Family Services ("MFS") is an Illinois nonprofit corporation and federally recognized tax-exempt organization that serves as ACT Now's fiscal sponsor. In that capacity, MFS holds ACT Now's federal grant awards, provides fiduciary and administrative oversight, and is the official grantee of record for ACT Now's FSCS grants.

12.     Plaintiff Afterschool for Children and Teens Now ("ACT Now") is a statewide unincorporated organization based in Illinois that works to expand access to high-quality out-of-school time, community school, and youth development programs. *See* Decl. of Susan Stanton (Stanton Decl.), Ex.1, ¶ 10.

13.     Plaintiff ACT Now has a long-standing relationship with the Illinois State Board of Education, state agencies, school districts, and national partners, and has played a central role in scaling community school initiatives statewide, particularly in both rural and urban/suburban communities with the highest levels of need. *Id.* ¶ 11.

14.     Defendant United States Department of Education ("Department") is an agency of the United States government responsible for administering federal education grant programs, including the FSCS program authorized under section 4625 of the Elementary and Secondary Education Act of 1965, codified at 20 U.S.C. § 7275.

15.     Defendant Linda McMahon is sued in her official capacity as Secretary of the United States Department of Education and is responsible for the administration and oversight of the Department and its discretionary grant programs.

16.     Plaintiffs' FSCS grant programs support 48.5 full time employees at partner schools and organizations, provide 545 hourly employment opportunities that would be immediately eliminated with the loss of funding. *See* Decl. of Lesley Rivers (Rivers Decl.), Ex. 2, ¶ 9.

17.     Plaintiffs' FSCS grant programs support the schools and communities of 19,000 students throughout the state of Illinois through comprehensive programming that would immediately stop with the loss of funds. Rivers Decl., Ex. 2, ¶¶ 10, 14.

18.     Plaintiffs would suffer immediate and irreparable harm to their program infrastructure if they are forced to cease all FSCS grant-related activities on January 1, 2026.

19.     The combined total of Plaintiffs' two FSCS grants is approximately $18.5 million annually, with funding originally awarded for five years. Loss of continued funding would eliminate more than $55 million in expected support over the remaining grant period. Stanton Decl., Ex. 1, ¶ 22.

## FACTUAL ALLEGATIONS

### I.  The Full-Service Community Schools Program

20.     The Full-Service Community Schools (FSCS) program is a discretionary grant program authorized by Title IV, Part F, Subpart 2[1] of the Elementary and Secondary Education Act of 1965 (ESEA) and administered by the U.S. Department of Education. 20 U.S.C. §§ 7271–7275. Under the statute, Congress directed that the Secretary use not less than 95 percent of the amounts made available for Subpart 2 programs to award grants, on a competitive basis, to entities carrying out Subpart 2 programs. 20 U.S.C. § 7273(1).

_____

[1] Subpart 2 includes both the Full-Service Community Schools program and the Promise Neighborhoods program.

21.     Congress created the FCFS grant program to:

> significantly improve the academic and developmental outcomes of children living in the most distressed communities in the United States, including ensuring school readiness, high school graduation, and access to a community-based continuum of high-quality services" by providing support for "full-service community schools that improve the coordination and integration, accessibility, and effectiveness of services for children and families, particularly for children attending high-poverty schools, including high-poverty rural schools."

20 U.S.C. § 7271.

22.     In alignment with its statutory obligations, the Department's stated purpose of the FCFS is to support the development and expansion of community schools that provide comprehensive academic, social, and health services to students and families through coordinated partnerships among schools, local educational agencies, and community-based organizations. *Full-Service Community Schools Program (FSCS)*, U.S. DEPARTMENT OF EDUCATION, https://www.ed.gov/grants-and-programs/grants-birth-grade-12/school-and-community-improvement-grants/full-service-community-schools-program-fscs (last visited Dec. 26, 2025).

23.     Pursuant to this authority, the Secretary of Education (Secretary) awards grants to support full-service community schools, defined as public elementary and secondary schools that participate in community-based efforts to coordinate and integrate educational, developmental, family, health, and other comprehensive services through community-based organizations and public and private partnerships and provides access to these services in school to students, family, and the community, including before- and after-school hours and weekends and during the summer. 20 U.S.C. § 7272(2). Grants are awarded on a competitive basis to eligible entities—including local educational agencies, nonprofit organizations, and eligible consortia—to carry out activities and evidence-based strategies identified in the statute. 20 U.S.C. § 7275.

24.     In addition to the authorizing statute, the FSCS program is governed by the

General Education Provisions Act (GEPA), codified at  20 U.S.C. § 1221 et seq., the Uniform

Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards set

forth in 2 C.F.R. Part 200 (Uniform Guidance), and the Education Department General

Administrative Regulations (EDGAR), including 34 C.F.R. Parts 75 through 81. Together, these

authorities establish the requirements governing the application process, selection criteria, grant

administration, reporting obligations, and continuation funding for multi-year discretionary

grants.

25.     FSCS competitions are conducted pursuant to 34 C.F.R. Part 75. Under this

framework, the Department issues a notice inviting applications that identifies the applicable

statutory authority, eligibility requirements, application requirements, selection criteria,

performance measures, and any priorities applicable to the competition. Program priorities may

include statutory priorities as well as any absolute, competitive preference, or invitational

priorities established by the Secretary through notice-and-comment rulemaking.[2] 34 C.F.R.

§ 75.105(b). Applicants must submit proposals responsive to the published requirements, and the

Department evaluates applications based on the criteria and priorities identified in the notice. *See*

*generally* 34 C.F.R. §§ 75.200–27.

26.     Once awarded, the grant obligates both the Department and the grantee to comply

with the terms and conditions of the award, including the approved project design, scope,

objectives, performance measures, and budget. 34 C.F.R. § 75.236. Specifically, grantees may

---

[2] Under 34 C.F.R. § 75.105(c), a competitive preference priority grants an application preference over
other applications without that priority; an absolute priority establishes a separate competition for
applications meeting that priority, and the Secretary reserves all or part of a program's funds solely for
that competition; and an invitational priority grants neither competitive preference nor absolute priority to
an application.

not alter the scope or objectives of the project without first requesting and obtaining the Secretary's prior approval. *See* 2 C.F.R. § 200.308(b).

27. Where the Secretary approves grants that span multi-year project periods, the Department awards funds for an initial budget period (typically no more than twelve months) and funds the remainder of the project period through regular continuation awards. 34 C.F.R. § 75.251(a)–(b). Continuation awards are made for subsequent budget periods assuming the grantee continues to meet multiple, specific regulatory requirements concerning grant performance, financial reporting, continued eligibility, and financial and administrative management requirements. *See* 34 C.F.R. §§ 75.118, 75.253(a)(1)–(4). Additionally, the Secretary must determine that continuing the project is "in the best interest of the Federal Government." 34 C.F.R. § 75.253(a)(5).

28. When deciding whether to issue a continuation award, including whether the project is "in the best interest of the Federal Government," the Secretary "may consider any relevant information *regarding grantee performance*," including required performance and financial reports, performance measures the Secretary established in the application notice, and "any other relevant information." 34 C.F.R. § 75.253(b) (emphasis added). A continuation award may be denied only if the grantee fails to meet one or more of these enumerated requirements. 34 C.F.R. § 75.253(f)(1).[3]

29. During the previous 45 years—and throughout six administrations, both Republican and Democratic—non-continuation determinations have been "exceedingly rare" and

---

[3] The Secretary may also deny a continuation award if a grantee fails to redress data-quality issues not relevant here. 34 C.F.R. § 75.253(f)(2).

"only tied to significant concerns related to project performance." Decl. of Ron Petracca

(Petracca Decl.), Ex. 3 ¶¶ 28-29

### Plaintiffs' FSCS Grant Awards

30.     Plaintiff Metropolitan Family Services (MFS) has been the fiscal sponsor of

Afterschool for Children and Teens NOW (ACT Now) since 2017. Stanton Decl., Ex. 1, ¶13.

ACT Now has been the recipient of two FSCS grants through MFS. Both are state-scaling grants,

which are designed to expand and sustain community-school infrastructure across the state. *Id.* at

¶ 17.

31.     In the FY 2023 Notice of Final Rules and Notice Inviting Applications for the

Full-Service Community Schools (FSCS) program, 88 Fed. Reg. 37222 (June 7, 2023), the

Department announced the governing priorities for the competition pursuant to 34 C.F.R.

§ 75.105. Under that regulation, applications were eligible for funding *only* if they satisfied the

applicable Absolute Priorities, while competitive preference priorities could earn additional

points but were not required for eligibility, and invitational priorities reflected areas of interest

without affecting scoring.

32.     The Notice established five Absolute Priorities: (1) Title I, Part A schoolwide

eligibility, (2) Title I, Part A schoolwide eligibility and rural districts, (3) Capacity Building and

Development, (4) Multi-LEA, and (5) State Scaling.[4] The Notice announced funding slates only

for applications meeting Absolute Priority 1 or 2 and one additional Absolute Priority. The

Notice also established two competitive preference priorities, one focused on integrated student

---

[4] "Title I, Part A" refers to that section of the Elementary and Secondary Education Act of 1965, as amended by the Every Student Succeeds Act. 20 U.S.C. § 6301 et seq. Since 1965, Congress's stated purpose for Title I "is to provide all children significant opportunity to receive a fair, equitable, and high-quality education, and to close educational achievement gaps." 20 U.S.C. § 6301.

supports and inclusive, trauma-informed, and identity-safe practices addressing students' "social, emotional, and academic needs," and the other focused on meaningful "cross-agency coordination and community engagement" to support systemic implementation and sustainability. 88 Fed. Reg. 37222, 37224–25 (June 7, 2023).

33.     Plaintiffs submitted two FY 2023 applications under this framework, seeking funding to serve low-income schools in both rural and urban districts across Illinois. The first application (PR/Award # S215J230149) was submitted under Absolute Priorities 1 and 5, and the second application (PR/Award # S215J230147) was submitted under Absolute Priorities 2 and 5. Grant Applications, Ex. 4. In both applications, Plaintiffs met all required Absolute Priorities and affirmatively elected to address both competitive preference priorities, seeking additional points for providing integrated student supports, inclusive and trauma-informed practices, and robust cross-agency and community coordination. Each application was reviewed, scored, and granted separately within its respective funding slate. 88 Fed. Reg. at 37224.

34.     Both of Plaintiffs' FSCS grants were awarded as multi-year discretionary grants with a five-year project period running from January 1, 2024, through December 31, 2028, and annual budget periods running from January 1 through December 31 of each year. 2024 Grant Award Notifications, Ex.5.

35.     Plaintiffs submitted all required regular reports. Through these grants, Plaintiffs serve approximately 19,000 students across Illinois and support dozens of school districts and community partners by providing mental health supports, afterschool programming, family engagement services, and schoolwide interventions that benefit entire school communities. Stanton Decl., Ex. 1, ¶¶ 24, 26. Plaintiffs received a continuation award for the 2025 budget period. 2025 Grant Award Notifications, Ex. 6.

36. On December 12, 2025—19 days before the end of the budget period—the Department issued Notices of Non-Continuation for both grants. Notices of Non-Continuation, Ex. 7. Each Notice stated that the Department had determined not to continue the award for the next budget period because the grants "provide[] funding for programs that reflect the prior Administration's priorities and policy preferences and conflict with those of the current Administration," the grants are "therefore inconsistent with, and no longer effectuates, the best interest of the Federal government." The Notices did not identify deficiencies in programmatic performance, fiscal management, or reporting.

37. Each Notice advised Plaintiffs of the right to request reconsideration within seven calendar days; Plaintiffs timely submitted these requests to the Department on December 18, 2025. Letters to Asst. Sec'y Baesler, Ex. 8.

38. On December 29, 2025, the Department notified Plaintiffs that the Department had denied the requests for reconsideration for both grants. Denials of Requests for Reconsideration (Denial Letters), Ex 23.

39. Congress appropriated $150,000,000 for the FSCS program under ESEA Title IV, Part F, Subpart 2, which established a period of availability through which these funds could be obligated through December 31, 2024. Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460, 684 (2024). That period of availability was subsequently and explicitly extended to December 31, 2025, via continuing resolution in March 2025. Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, § 1101, 139 Stat. 9, 11 (2025). As a result, at the time the Department issued the challenged Notices of Non-Continuation, the FY 2025 FSCS funds at issue remained lawfully available for obligation under governing appropriations law.

40.     However, absent injunctive relief, those funds will not be available for obligation by the Department after December 31, 2025.

### Impact of December 31, 2025, Funding Termination

41.     Without injunctive relief, funding will lapse. Plaintiffs will be unable to use any funds, including carryover funds, to carry out any grant operations.[5] Plaintiffs will be forced to cease all FSCS-funded operations and begin grant closeout procedures as of January 1, 2026. Stanton Decl., Ex. 1, ¶ 27.

42.     Because Plaintiffs' grants were discontinued, and the Department did not grant Plaintiffs a no-cost extension, once the current budget period ends, Plaintiffs will be legally prohibited from incurring any new obligations under the awards and required to unwind contracts, terminate staff, and halt reimbursements to partner schools and community organizations. Stanton Decl., Ex. 1, ¶ 29.

43.     This will cause an immediate shutdown of statewide FSCS activities, including integrated student supports, mental and behavioral health services, family engagement programming, expanded learning opportunities, data collection and analysis, school safety initiatives, food insecurity initiatives, career support programming, and community-based partnerships that are currently operating in the middle of the school year. *Id.*, Ex. 1 at 29-30, Decl. of Michael Guilmette (Guilmette Decl.), Ex. 9, ¶¶ 13-14; Rivers Decl., Ex. 2, ¶¶ 14-18; Decl. of Sarah Norton (Norton Decl.), Ex. 10, ¶¶ 13-15; Decl. of Patrick Brosnan (Brosnan Decl.), Ex. 11, ¶¶ 12-17; Decl. of Valerie Clodi (Clodi Decl.), Ex. 12, ¶¶ 10, 14.

---

[5] While Plaintiffs would not be able to carry out any grant activities with grant funds, they would be able charge "necessary administrative costs" during closeout up until the due date of the final reports. 2 C.F.R. § 200.472(b).

44.     ACT Now administers and supports these grants through a unified statewide framework that includes staffing, fiscal oversight, compliance support, technical assistance, and coordination across all partner sites. As a result, the termination of funding affects not only individual partner sites, but ACT Now's ability to function as the central entity responsible for implementing and sustaining statewide FSCS programming. Stanton Decl., Ex. 1 ¶ 30(a), (b).

45.     Furthermore, because these programs operate on a reimbursement model and rely on predictable access to federal funds, even a temporary disruption in funding will have disastrous consequences for Plaintiffs. Schools and community partners cannot lawfully continue services without assurance of reimbursement, and thus must immediately stop operations, terminate staff, and cancel contracts. Stanton Decl., Ex. 1, ¶ 29. Indeed, some have already begun doing so. Rivers Decl., Ex. 2,¶ 17. Once staff are laid off and services are discontinued, restarting them is not a simple matter of restoring funds. Hiring, background checks, training, restoring community networks, and rebuilding service delivery infrastructure would take months or years Guilmette Decl., Ex. 9,¶¶ 13-14; Rivers Decl., Ex. 2, ¶ 16; Norton Decl., Ex. 10,¶ 14; Brosnan Decl., Ex. 11, ¶ 17; Clodi Decl., Ex. 12,¶ 14.

### Harm to Infrastructure and Organizational Capacity

46.     The sudden and unanticipated loss of FSCS funding will result in the dismantling of organizational infrastructure and operational capacity for Plaintiffs and their subgrantee partners. The grants fund not only direct services, but also the personnel and administrative systems necessary for program coordination, compliance, reporting, and sustainability.

47.     ACT Now will be forced to eliminate 13 core staff positions and dismantle its statewide technical assistance, compliance, and oversight infrastructure, rendering it unable to

support subgrantees, manage data and reporting obligations, or coordinate statewide learning networks. Stanton Decl., Ex. 1, ¶ 30; Guilmette Decl., Ex. 9, ¶¶ 4, 13, 14.

48. Partner school districts will experience corresponding losses in staffing and program capacity. Herrin Central Unified School District, which serves approximately 2,300 students, is supported by nine staff positions funded by Plaintiffs' FSCS rural grant that will be eliminated if funding is removed. *See* Clodi Decl., Ex. 12, ⊩ 5, 8. As a school district, hiring and even re-hiring decisions have to be approved by the Board of Education and are long and resource-intensive processes that would likely extend until the end of the school year. *Id*. ⊩ 14.

49. Because Plaintiffs did not receive reasonable notice of the discontinuation of their grants, Plaintiffs were unable to take steps to mitigate harm and create a sustainability plan that would have allowed it to continue functioning after the grants ended.

**Harm to Relationships**

50. Funding termination will also disrupt long-standing relationships that support community schools. FSCS grants are designed to sustain long-term partnerships among schools, families, community organizations, and state-level intermediaries. Abrupt termination mid-year will fracture trust with school districts, parents, and community partners; undermine ACT Now's credibility as a reliable intermediary; and permanently damage partnerships that have taken years to build. Guilmette Decl., Ex. 9, ¶¶ 13, 14, 16; Rivers Decl., Ex. 2, ¶¶ 16, 17; Stanton Decl., Ex. 1, ¶ 30(c).

## CAUSES OF ACTION

### COUNT I
### Administrative Procedure Act
### Arbitrary and Capricious Agency Action

51.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

52.     The Department's issuance of the Notices of Non-Continuation and subsequent Denial Letters constitutes final agency action reviewable under the Administrative Procedure Act (APA). See 5 U.S.C. § 704.

53.     Under the APA, an agency must provide a reasoned explanation for its decisions, *Judulang v. Holder*, 565 U.S. 42, 45 (2011)), that includes "a rational connection between the facts found and the choice made," *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292–93 (2024) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)). For the decision to be upheld, an agency must have "considered relevant data under the correct legal standards and offered a satisfactory explanation for its action." *Dana Container, Inc. v. Sec'y of Lab.*, 847 F.3d 495, 499 (7th Cir. 2017).

54.     The Department acted arbitrarily and capriciously because the Notices of Non-Continuation and Denial Letters failed to identify any deficiencies in Plaintiffs' grant performance, compliance, or progress toward approved objectives, as required by governing regulations. *See* 34 C.F.R. § 75.253(b).

55.     Instead, the Department relied on vague and conclusory assertions that continuation was not in the "best interest of the Federal Government," without reference to Plaintiffs' performance reports, grant activities, or other relevant information.

56.     The Department cited only a sparse handful of quotes from Plaintiffs' grant applications and failed to explain how—or the extent to which—any evidence considered supports its determination that the grants conflict with agency priorities or were not in the best

interest of the Federal Government to continue. The Notices lack the "rational connection" the APA requires. *Ohio*, 603 U.S. at 292–93.

57.    Likewise, the Denial Letters failed to provide any explanation for its decision to deny Plaintiffs' requests for reconsideration. Instead, the Department quoted again from Plaintiffs' applications—some identical and some new references—and simply concluded that "the information in your request for reconsideration was not sufficient to refute these findings." Denial Letters, Ex. 23.

58.    The Denial Letters lack any discussion of the information in Plaintiffs' requests for reconsideration. For example, the Denials Letters do not respond to Plaintiffs' arguments that the offending grant-application language was a) in response to priorities the Department established through notice-and-comment rulemaking, b) described Plaintiffs' mission and values rather than proposed programs, and c) to the extent programs were contemplated, "**the proposed activities were not implemented as part of this grant project.**" Letters to Asst. Sec'y Baesler, Ex. 8.

59.    The Denial Letters also fail to contend with Plaintiffs' assertion that the records submitted with their request "that the budget is in full compliance with the Administration's guidance prohibiting the use of grant funds for activities that do not prioritize merit, fairness, and excellence in education, and remains consistent with—and effectuates—the best interests of the Federal Government." Letters to Asst. Sec'y Baesler, Ex. 8. The Department further acted arbitrarily and capriciously by relying on factors Congress did not intend the Department to consider, including perceived misalignment with the current Administration's policy preferences.

60.    Defendants ignored regulations requiring non-continuation decisions to be based on grantee performance. Instead, the Department appears to have created an entirely new factor

for non-continuation based on policy alignment within the grant application, in essence withdrawing funding because the Plaintiffs' grant applications did not align with the policy preferences of an administration that did not exist at the time the applications were submitted and approved for funding.

61.     Neither the statute nor the regulations suggest an intent to allow changes in policy following new administrations to impact FSCS grants. *See* 20 U.S.C. § 7273(c) (making continued funding beyond a grant's third year contingent on a grantee's progress the "annual performance objectives and outcomes" laid out in statute.)

62.     The Department's actions therefore violate the APA and must be set aside. *See* 5 U.S.C. § 706(2)(A).

**COUNT II**
**Administrative Procedure Act**
**Agency Action Contrary to Law**

63.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

64.     The Department's non-continuation decisions are contrary to law because they misinterpret and misapply the regulatory framework governing continuation awards for multi-year discretionary grants.

65.     When interpreting regulations, courts apply the same core principles that govern statutory interpretation. *See Exelon Generation Co. v. Local 15*, *International Brotherhood of Electrical Workers, AFL-CIO*, 676 F.3d 566, 570 (7th Cir. 2012).

66.     Like a statute, a regulation should be read in context and as part of a coherent regulatory scheme, such that each provision is interpreted consistently with the others and "no

clause, sentence, or word shall be superfluous, void, or insignificant." *Young v. UPS*, 575 U.S. 206 (2015) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

67.     Through the Notices and Denial Letters, the Department appears to have interpreted the "best interest" requirement to create from whole cloth a de facto second review of approved grant applications for alignment with new, unpublished, and previously undisclosed grant priorities—priorities that conflict with the published FY 2023 Notice against which these applications have already been awarded, and priorities of which the applicants could not have been aware.[6]

68.     By interpreting the regulation to permit non-continuation based on undisclosed and retroactive policy preferences unrelated to grant performance, the Department acted contrary to law in violation of the APA.

### COUNT III
### Administrative Procedure Act
### Agency Action in Excess of Statutory Authority

69.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

70.     The Department's actions were contrary to law because they penalized Plaintiffs for complying with a statutory requirement imposed by Congress.

71.     Section 427 of the General Education Provisions Act (GEPA), 20 U.S.C. § 1288a, requires every applicant for federal education funds "to develop and describe in such applicant's

---

[6] Such a review process appears to comply with President Trump's Executive Order requiring that agencies "review discretionary grants to ensure that they are consistent with agency priorities and the national interest" and ensure that such awards "must, where applicable, demonstrably advance the President's policy priorities." Sec. 3, 4(b)(i), Exec. Order 14332, "Improving Oversight of Federal Grantmaking", 90 Fed. Reg. 38929 (Aug. 7, 2025).

application the steps such applicant proposes to take to ensure equitable access to, and equitable participation in, the project or activity to be conducted with such assistance, by addressing the special needs of students, teachers, and other program beneficiaries in order to overcome barriers to equitable participation, including barriers based on gender, race, color, national origin, disability, and age."

72.    Plaintiffs complied with this statutory requirement and included a statement on how it would ensure equitable access: "ACT Now will also ensure equitable access to the resources and trainings we create to support community schools. All of our trainings are developed with a racial equity and cultural competency lens." FY 2024 GEPA Statements, Ex. 14.

73.    The Department nevertheless cited in the Notices and Denial Letters to the response to this required assurance as a basis for denying continuation funding. Notices of Non-Continuation, Ex. 7; Denial Letters, Ex. 23.

74.    There is no authority in the authorizing statute or governing regulations that permits the Department to treat compliance with Section 427 as a reason to discontinue funding.

75.    By converting a congressionally-mandated application element into evidence against Plaintiffs, and by applying that penalty selectively rather than uniformly across all applicants subject to the same statutory requirement, the Department acted arbitrarily, capriciously, and in excess of its statutory authority and in direct contravention of law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C).

**COUNT IV**
**U.S. Constitution**
**Violation of the Spending Clause and the Separation of Powers**

76.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

77.     The Department's actions violate the Spending Clause, U.S. CONST. art. I, § 8, cl. 1, in that they constitute an exercise of authority not granted to the Executive Branch.

78.     The Spending Clause vests Congress, not the Executive Branch, with authority to determine the terms and conditions under which federal funds are spent. *New York v. United States*, 505 U.S. 144, 167 (1992); *South Dakota v. Dole*, 483 U.S. 203, 206 (1987).

79.     Although Congress may delegate limited spending authority to executive agencies, agencies may not impose extra-statutory or retroactive conditions on federal grants to advance policy objectives not authorized by Congress. *City of Chicago v. Barr*, 961 F.3d 882, 892 (7th Cir. 2020).

80.     The Department not only applied their own funding conditions but applied them retroactively by conditioning continuation awards not on the statutory and regulatory criteria in effect when the grants were awarded, but on the grant application's alignment with the current Administration's policy preferences.

81.     The federal government may not retroactively apply changes to the substantive requirements of a federal grant program. *Bennett v. New Jersey*, 470 U.S. 632, 640 (1985).

82.     By conditioning receipt of continuation funding on whether Plaintiffs' approved applications aligned with the current Administration's political priorities, the Department exceeded the authority delegated to it by Congress, in violation of the Spending Clause and the Separation of Powers.

**COUNT V**
**U.S. Constitution, Fifth Amendment**
**Due Process, Void-for-Vagueness**

83. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

84. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.

85. The Fifth Amendment "requires the invalidation of laws that are impermissibly vague." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

86. A fundamental principal of due process is "that regulated parties should know what is required of them so they may act accordingly." *Id.*

87. The Department relied on the claim that continuation of Plaintiff's grants was not in the "best interest of the Federal Government" without providing a clear definition of that term or identifying what conduct, program characteristics, or grant activities would satisfy the best interest standard.

88. The Department's interpretation of the best interest standard functioned as an open-ended and discretionary basis for denying continuation funding, which permitted decisions based in indeterminate discretionary criteria rather than objective measures.

89. This indeterminate standard invites arbitrary enforcement in violation of the Fifth Amendment's due process protections.

**COUNT VI**
**U.S. Constitution, Fifth Amendment**
**Due Process, Procedural Due Process**

90. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

91.    The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.

92.    The Department's actions violated Plaintiffs' Fifth Amendment rights to procedural due process by depriving them of fair notice and a meaningful opportunity to be heard before the loss of federal grant funding.

93.    Even when a person does not have a legal entitlement to a benefit or where the government retains discretion in a final determination, "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

94.    The awarding of continuation awards for multi-year discretionary grants is based on a detailed statutory and regulatory scheme. *See, e.g.,* 20 U.S.C. §§ 7271–75, 34 C.F.R. Parts 75–81; 2 C.F.R. Part 200.

95.    That framework, together with the longstanding practice of making the decision to award continuation awards on the basis of performance rather than application content, created reasonable procedural expectations that Plaintiff's continuation award determinations would be made in accordance with these procedures, together with fair notice and a reasonable opportunity to respond.

96.    The Department deprived Plaintiffs of due process by issuing Notices of Non-Continuation only 19 days—and Denial Letters only 2 days—before the end of Plaintiff's budget period. This compressed timeline deprived Plaintiffs of fair notice and made virtually impossible a meaningful review of the Department's actions before funding expires on December 31, 2025.

97.    The Department therefore violated the Fifth Amendment's guarantee of due

process.

### COUNT VII
### U.S. Constitution, First Amendment
### Free Speech Clause (Retaliation and Viewpoint Discrimination)

98.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of

the preceding paragraphs.

99.    The First Amendment provides that the government "shall make no law . .

.abridging the freedom of speech." U.S. CONST. amend. I.

100.    The First Amendment prohibits government officials from retaliating against

individuals or entities for engaging in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398

(2019).

101.    Plaintiffs engaged in protected speech by expressing their mission, values, and

commitments in their grant applications, including statements required by federal statute.

102.    In one of the Notices and Denial Letters, the Department cited a section of

Plaintiffs' application that described Plaintiff ACT Now's mission and values but did not

propose any grant activities. Plaintiffs wrote that "ACT Now's mission has equity and racial

justice at its core. We are driven to ensuring that all youth are prepared for success in school,

career, and life, through participation in high-quality community schools programs." Notices of

Non-Continuation, Ex. 7; Denial Letters, Ex. 23.

103.    In both Notices, the Department cited language regarding Plaintiff ACT Now's

access to resources, and descriptions of trainings and projects that were not proposed grant

activities, not integral to the project's scope and objectives, and not paid for with grant funds:

> ACT Now is a statewide leader in providing trainings on gender and sexuality to
> educators, offering Gender and Sexuality in OST 101 and 102 professional development

23

courses. ACT Now, as the statewide afterschool network, has access to a variety of partners and content experts that develop curriculum focused on inclusion, such as the 1619 project. Throughout the year, ACT Now also hosts a variety of trainings for educators focused on trauma-informed care and racial equity."

Notices of Non-Continuation, Ex. 7.

104. Rather than identifying any misuse of funds, deviation from the approved scope of work, or failure to meet performance measures, the Department relied on Plaintiffs' expressive statements regarding its overarching values and principles as evidence that continuation funding was not in the "best interest of the Federal Government." Notices, Ex. 7.

105. The Department's decision accordingly penalizes Plaintiffs not for what they did with federal funds, but for what they said about their beliefs, values, and experience.

106. The Department relied on those expressive statements as a basis for denying continuation funding, rather than on Plaintiff's use of federal funds or on grant performance.

**Count VIII**
**U.S. Constitution, First Amendment**
**Free Speech Clause (Unconstitutional Condition)**

107. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

108. The First Amendment provides that the government "shall make no law . . .abridging the freedom of speech." U.S. Const. amend. I.

109. The unconstitutional conditions doctrine "prevents the government from awarding or withholding a public benefit for the purpose of coercing the beneficiary to give up a constitutional right or to penalize his exercise of a constitutional right." *Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 986 (7th Cir. 2012); *see also Rumsfeld v. FAIR, Inc.,* 547 U.S. 47, 59 (2006).

110.    Conditioning federal funds on the grantee's agreement not to engage in protected speech even when engaging in activities that are not funded by the federal government is a violation of the First Amendment. *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214-15 (2013); *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548-49 (2001); *FCC v. League of Women Voters*, 468 U.S. 364, 400 (1984).

111.    Promoting the concepts of equity, racial justice, inclusion, and trauma-informed care is protected speech.

112.    By conditioning continuation funding on whether Plaintiffs' previously approved applications align with the current Administration's preferred viewpoints, the Department penalized Plaintiffs for protected speech and imposed unconstitutional conditions on the receipt of federal funds.

113.    The Department's actions therefore violate the First Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and grant the following relief:

A.      Declare that the Department's issuance of the Notices of Non-Continuation and subsequent Denials of Request for Reconsideration constitutes final agency action that is arbitrary, capricious, contrary to law, and in excess of statutory authority, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A) and (C);

B.      Declare that the Department's actions violate the Spending Clause and separation-of-powers principles of the United States Constitution;

C.      Declare that the Department's actions violate Plaintiffs' rights under the First Amendment and the Due Process Clause of the Fifth Amendment;

D.      Vacate and set aside the Notices of Non-Continuation and Denials of Request for Reconsideration issued to Plaintiffs for its Full-Service Community Schools grants;

E.      Order the Department to, consistent with applicable statutes and regulations, review Plaintiffs' eligibility for a continuation award and, if necessary, to release such funding;

F.      Preliminarily and permanently enjoin the Department, its officers, agents, servants, employees, and all persons acting in concert with it from enforcing the challenged Notices of Non-Continuation and Denials of Request for Reconsideration;

G.      Enjoin the Department from denying continuation funding based on extra-statutory, retroactive, or viewpoint-based criteria not authorized by Congress or disclosed through lawful rulemaking;

H.      Retain jurisdiction over this action to ensure compliance with the Court's orders and to provide such further relief as justice may require;

I.      Award Plaintiffs its reasonable attorneys' fees and costs; and

J.      Grant such other and further relief as the Court deems just and proper.

Dated: December 29, 2025                    Respectfully Submitted,

/s/ *Jocelyn Skinner*
Jocelyn (Josie) E. Skinner*
Emily K. Merolli*
SLIGO LAW GROUP, PLLC
1717 K St. NW, suite 900
Washington, DC 20006
Tel: (202) 888-2084
josie@sligolawgroup.com
emily@sligolawgroup.com

/s/ *Aneel Chablani*
Aneel L. Chablani (No. 6242658)
Beatriz A. Diaz-Pollack (No. 6274809)
Michael R. Ortega (No. 6339469)**
Chicago Lawyers' Committee for Civil Rights
25 E. Washington St., Ste. 1300
Chicago, IL 60602
Telephone: (312) 630-9744
Facsimile: (312) 630-1127
achablani@clccrul.org
bdiaz-pollack@clccrul.org
mortega@clccrul.org

Attorneys for Metropolitan Family Services and Action for Children and Teens Now (ACT Now) Coalition

*Pro hac vice motion forthcoming*

**Application for admission pending*