UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AFTERSCHOOL FOR CHILDREN AND TEENS NOW (ACT NOW) COALITION and METROPOLITAN FAMILY SERVICES<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION and LINDA McMAHON, in her official capacity as Secretary, U.S. Department of Education,<br><br>Defendants. | Case No. 25-cv-15704<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |

# INTRODUCTION

Plaintiffs seek a Temporary Restraining Order (TRO) pursuant to Federal Rule of Civil Procedure 65(b) preserving the status quo by (1) extending the period of availability for obligation of fiscal year (FY) 2025 funds appropriated for expenditures in March 2025 and which are currently set to become unavailable for future obligations after December 31, 2025, and (2) enjoining the U.S. Department of Education (Department)—including its officers, agents, servants, employees, and attorneys—from obligating, reallocating, or otherwise committing those funds to other projects pending resolution of this action, so that the Department's non-continuation decisions are not rendered permanent by the lapse or diversion of appropriated funds before a proper hearing occurs.

As set forth below, Plaintiffs have made a clear showing that immediate and irreparable loss, injury, or damage will result to Plaintiffs if the Court does not grant immediate injunctive

relief without hearing from Defendants. Absent relief, Plaintiffs' budget period will end on December 31, 2025, and Plaintiffs will be forced to cease project-funded activities before the Department will be able to issue legally sufficient responses to the pending requests for reconsideration. Given the disruption to and potential dismantling of Plaintiffs' core program operations, the resulting harms are ongoing and would ultimately be irreparable if Plaintiff is forced to cease project operation.

Plaintiffs have also demonstrated a strong likelihood of success on their claims that the Department's actions are unlawful under the Administrative Procedure Act (APA), First Amendment, Fifth Amendment, and the Spending Clause. Finally, Plaintiffs have demonstrated that the balance of equities and the public interest overwhelmingly favor preserving the status quo by preventing irreversible harm while the challenges to the non-continuation decisions complete the legally required review processes.

## THE FULL-SERVICE COMMUNITY SCHOOLS GRANT PROGRAM

As set forth in greater detail in the Complaint at ¶¶ 20-29 (and incorporated herein), the Full-Service Community Schools (FSCS) discretionary grant program supports the development and expansion of community schools that provide comprehensive academic, social, and health services to students and families through coordinated local partnerships. The FSCS program—including the application, competition, award, multi-year funding, and termination processes—is governed by comprehensive statutory and regulatory requirements, as are the standards and policy priorities against which grant applicants are judged. This statutory and regulatory structure requires that FSCS grants be administered using transparent criteria, predictable processes, and performance-based standards rather than ad hoc or undisclosed policy

considerations, and provides grantees meeting the conditions of their awards continuity of funding, contingent on funding availability.

As set forth in detail in the Complaint at ¶¶ 30-35 (and incorporated herein), in 2023, Plaintiffs were awarded two multi-year FSCS grants to run through 2028. From the submission of their applications to the present, Plaintiffs have met all applicable statutory and regulatory requirements. Nevertheless, the Department—only 19 days before the end of the current budget period—informed Plaintiffs that their grant funding would not be continued after December 31, 2025. The Department provided no evidence—and indeed did not argue—that its decision was based on Plaintiffs' performance. Instead, the Department relied on vague and conclusory assertions that continuation was not in the "best interest of the Federal Government," citing only to Plaintiffs' grant applications and noting that those statements did not align with the policy preferences of the current Administration. On December 29, 2025, two days before the end of the budget period, the Department notified Plaintiffs that their request for reconsideration was denied. Denials of Request for Reconsideration, Ex. 23.

## ARGUMENT

"The standard for issuing a temporary restraining order is identical to that governing the issuance of a preliminary injunction." *Mays v. Dart*, 453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020). To obtain a preliminary injunction, Plaintiffs must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023) (*citing Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Of these factors, the two most important considerations are likelihood of success on the merits and irreparable harm. *Ibid.*

I. **Plaintiffs are Likely to Succeed on the Merits**

A. **The Department's Actions were Arbitrary and Capricious under the APA**

Under the Administrative Procedure Act, an agency must provide a reasoned explanation for its decisions, *Judulang v. Holder*, 565 U.S. 42, 45 (2011), that includes "a rational connection between the facts found and the choice made." *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292–93 (2024). For the decision to be upheld, an agency must have "considered relevant data under the correct legal standards and offered a satisfactory explanation for its action." *Dana Container, Inc. v. Sec'y of Lab.*, 847 F.3d 495, 499 (7th Cir. 2017).

The Department's Notices of Non-Continuation (Notices) and Denials of Requests for Reconsideration (Denial Letters) provided no such explanation. The Notices and Denial Letters offered only vague and conclusory assertions without identifying any specific facts, program measures, or regulatory criteria that support denying funding continuation. While the Notices and Denial Letters made superficial reference to the "best interest of the Federal Government," they failed to establish—or even assert—that this conclusion was based upon Plaintiffs' performance, as required by 34 C.F.R. § 75.253(b). The Department cited only a sparse handful of quotes from Plaintiffs' grant applications and made no reference to Plaintiffs' performance reports, grant activities, or other performance-related information. The Notices and Denial Letters also failed to explain how the material cited shows that the grants conflict with agency priorities or were not in the best interest of the Federal Government to continue. Notices of Non-Continuation, Ex. 16. The plain language of the Notices and Denial Letters clearly lack the "rational connection" the APA requires. *Ohio*, 603 U.S. at 292–93.

An agency's decision is also considered arbitrary or capricious where the agency has relied on factors which Congress had not intended it to consider. *Zero Zone, Inc. v. United States*

4

*Dep't of Energy*, 832 F.3d 654, 668 (7th Cir. 2016). Here, Defendants ignored regulations requiring non-continuation decisions to be based on grantee performance. Instead, the Department appears to have created an entirely new factor for non-continuation based on policy alignment within the grant application, in essence withdrawing funding because the Plaintiffs' grant applications did not align with the policy preferences of an administration that did not exist at the time the applications were submitted and approved for funding. Nowhere does the statute allow changes in policy following new administrations to impact FSCS grants. *See* 20 U.S.C. § 7273(c) (making continued funding beyond a grant's third year contingent on a grantee's progress the "annual performance objectives and outcomes" laid out in statute.)

    **B.**    **The Department's Actions were Contrary to Law Because They Incorrectly Applied the Governing Regulations**

When interpreting regulations, courts apply the same core principles that govern statutory interpretation. *See Exelon Generation Co. v. Local 15, International Brotherhood of Electrical Workers, AFL-CIO*, 676 F.3d 566, 570 (7th Cir. 2012). Like a statute, a regulation should be read in context and as part of a coherent regulatory scheme, such that each provision is interpreted consistently with the others and "no clause, sentence, or word shall be superfluous, void, or insignificant." *Young v.* UPS, 575 U.S. 206, 226 (2015). Likewise, where a regulation sets forth a list of specific requirements followed by a more general provision, the canon of *ejusdem generis* requires that the general provision be interpreted in light of the specific provisions that precede it. *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 383 (7th Cir. 2020). Further, courts may defer to agency interpretations of their own regulations only after exhausting all traditional tools of construction, lest an agency, "under the guise of interpreting a regulation . . . create *de facto* a

5

new regulation." *Kisor v. Wilkie,* 588 U.S. 558, 575 (2019) (quoting *Christensen v. Harris County*, 529 U.S. 576, 588 (2000)).

Here, the Department's Notices and Denial Letters state only that the Secretary determined continuation of the project was not in the best interest of the Federal Government. There is no evidence that the Department based their determination upon Plaintiffs' performance, compliance, or progress toward approved goals and objectives as required by the regulations. Instead, the Department appears to have interpreted the "best interest" requirement as an unlimited grant of discretion.

That interpretation is utterly contrary to the regulatory scheme. Reading the "best interest of the Federal Government" requirement as unbounded renders the remaining continuation award criteria meaningless. If the Secretary could deny a continuation award solely by invoking the best interest standard for any reason whatsoever—without regard to performance measures, financial compliance, reporting requirements, or approved project objectives—the detailed regulatory framework governing multi-year discretionary grants would serve no purpose. *Cf. City of Chicago v. Barr*, 961 F.3d 882, 894 (7th Cir. 2020) (declining to read "a clause in a catch-all provision at the end of a list of explicit powers" to contain "a sweeping power to impose *any* conditions on *any* grants."). Such an interpretation would allow the Secretary to override all other regulatory requirements through a conclusory assertion, effectively nullifying the continuation framework set forth in 34 C.F.R. § 75.253.

Moreover, this interpretation undermines the integrity of the discretionary grant process by permitting a future administration's undetermined policy preferences to displace the standards that governed the award when it was made. In doing so, the Department has interpreted § 75.253(a)(5) in a manner that creates a *de facto* new rule conditioning continued funding on

6

grantee's predicting and conforming to a future administration's policy preferences and applies it retroactively to existing grants, without notice, explanation, or the procedural protections required by law.

### C. The Department's Actions were Contrary to Law Because They Penalized Plaintiffs for a Statutorily Required Application Element and Exceeded Statutory Authority

Section 427 of the General Education Provisions Act, codified at 20 U.S.C. § 1288a, requires every applicant for federal education funds to describe the steps they will take to address "the special needs of students, teachers, and other program beneficiaries in order to overcome barriers to equitable participation, including barriers based on gender, race, color, national origin, disability, and age." 20 U.S.C. § 1288a(b). Plaintiffs' application included such a statement. FY 2024 GEPA Statements, Ex. 17 ("ACT Now will also ensure equitable access to the resources and trainings we create to support community schools. All of our trainings are developed with a racial equity and cultural competency lens."). The Department nevertheless cited this statutorily required response as a basis for denying continuation funding. *See* Notices, Ex. 16; Denial Letters, Ex. 23.

By converting a congressionally-mandated application element into evidence against Plaintiff, the Department acted arbitrarily, capriciously, and in excess of its statutory authority and in direct contravention of law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C).

### D. The Department's Actions Violate the Spending Clause and the Separation of Powers

7

The Spending Clause establishes that Congress alone has the authority to spend federal funds. Additionally, "Congress may attach conditions on the receipt of federal funds." *New York v. United States*, 505 U.S. 144, 167 (1992. Although Congress may delegate spending authority to the Executive Branch, "[t]he [Secretary's] use of extra-statutory conditions on federal grant awards as a tool to obtain compliance with his policy objectives strikes at the heart of...the separation of powers." *City of Chicago v. Barr*, 961 F.3d 882, 892 (7th Cir. 2020).

Compounding their constitutional violation, Defendants here applied their extra-statutory conditions retroactively. Regardless of which branch of the federal government acts, the government may not retroactively apply new requirements to funds awarded under an earlier statutory and regulatory regime. Instead, expenditures must be according to "the law in effect when the grants were made." *Bennett v. New Jersey*, 470 U.S. 632, 640 (1985).

Here, the Department does precisely what *Bennett* forbids. The Department writes in the Notices, and repeats in the Denial Letters, that it "determined that the [Plaintiffs'] grant … provides funding for programs that reflect the prior Administration's priorities and policy preferences and conflict with those of the current Administration." The Department concludes that "[t]he grant is therefore inconsistent with, and no longer effectuates, the best interest of the Federal Government and will not be continued." Notices, Ex. 16; Denial Letters, Ex. 23.

This language reflects that the Department chose to review applications previously reviewed, scored, and awarded grant funds for ongoing projects. As the Supreme Court held decades ago, "[r]etroactive application of changes in the substantive requirements of a federal grant program would deny . . . grant recipients fixed, predictable standards for determining if expenditures are proper." *Bennett*, 470 U.S. at 640. By conditioning receipt of continuation funding on whether Plaintiffs' approved applications aligned with the current administration's

political priorities, the Department exceeded the authority delegated to it by Congress, in violation of the Spending Clause and the Separation of Powers.

    E.    **The Department's Actions are Unconstitutionally Vague**

The Fifth Amendment "requires the invalidation of laws that are impermissibly vague." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). A fundamental principal of due process is "that regulated parties should know what is required of them so they may act accordingly." *Id.* The Department relied on the claim that continuation of Plaintiffs' grants was not in the "best interest of the Federal Government" without defining that standard or identifying what conduct, program characteristics, or grant activities would satisfy it, basing the determination on indeterminate discretionary criteria rather than objective measures. This indeterminate standard invites arbitrary enforcement in violation of the Fifth Amendment's due process protections.

    F.    **The Department's Actions Violate Plaintiffs' Fifth Amendment Right to Due Process**

The Department's actions deprive Plaintiffs of fair notice and a meaningful opportunity to be heard before the loss of federal grant funding. Even when a person does not have a legal entitlement to a benefit or where the government retains discretion in a final determination, "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). The awarding of continuation awards for multi-year discretionary grants is based on a detailed statutory and regulatory scheme. That framework, together with the longstanding practice of basing continuation awards on performance rather than application content, created reasonable procedural expectations that Plaintiffs' continuation

9

award determinations would accord with these procedures, together with fair notice and a reasonable opportunity to respond.

The Department issued the challenged Notices only nineteen days before the close of Plaintiffs' budget period, and the Denial Letters just two days before the close of the budget period giving Plaintiffs virtually no time to plan for discontinuation. Accordingly, the Department denied Plaintiffs the notice and opportunity for process that the Fifth Amendment requires before the deprivation of a protected property interest.

G. **The Department's Actions Retaliate Against Plaintiffs for Protected Speech, Constitute Viewpoint Discrimination, and Impose Unconstitutional Conditions**

The First Amendment prohibits government officials from retaliating against individuals or entities for engaging in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). To establish a claim of First Amendment retaliation, a plaintiff must establish that (1) it engaged in activity protected by the First Amendment, (2) it suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was a "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008).

Those elements are satisfied here. In the Notices and Denial Letters, the Department cited multiple sections of Plaintiffs' applications that describe Plaintiff ACT Now's mission and values, access to resources, and other trainings and activities not part of any proposed grant activities. The Department relied on Plaintiffs' expressive statements regarding its overarching values and principles as evidence that continuation funding was not in the "best interest of the Federal Government." Notices, Ex. 16; Denial Letters, Ex. 23. The Department's decision accordingly penalizes Plaintiffs not for what they did with federal funds, but for what they said

they believe, expressly concluding that viewpoints expressed in Plaintiffs' applications—including commitments to equity and racial justice—conflict with the priorities and policy preferences of the current Administration. Defendants' targeting Plaintiffs' speech because of their views makes the "egregious" First Amendment violation "all the more blatant." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

The Department's actions also violate the unconstitutional conditions doctrine, which "prevents the government from awarding or withholding a public benefit for the purpose of coercing the beneficiary to give up a constitutional right or to penalize his exercise of a constitutional right." *Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 986 (7th Cir. 2012). "[T]he government may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit." *Rumsfeld v. FAIR, Inc.,* 547 U.S. 47, 59 (2006).

## II. Plaintiffs Will Suffer Irreparable Harm Absent Immediate Relief and the Government Will Suffer No Harm

Irreparable harm exists where an injury is likely and imminent and cannot be remedied by legal relief after the fact. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022). That standard is easily met here. Absent immediate injunctive relief, Plaintiffs will suffer harm that is not only likely, but certain, immediate, and incapable of later repair.

Plaintiffs will be forced to cease all FSCS-funded operations and begin grant closeout procedures as of December 31, 2025. Plaintiffs will be legally prohibited from incurring any new obligations under the awards and required to unwind contracts, terminate staff, and halt reimbursements to partner schools and community organizations. Decl. of Susan Stanton

(Stanton Decl.), Ex. 18, ¶ 29. This will cause an immediate shutdown of statewide FSCS activities, including integrated student supports, mental health services, family engagement programming, expanded learning opportunities, data collection and analysis, school safety initiatives, food insecurity initiatives, career support programming, and community-based partnerships that are currently operating in the middle of the school year. Stanton Decl., Ex.18, ¶¶ 29-30, Decl. of Michael Guilmette (Guilmette Decl.), Ex. 19, ¶¶ 13-14; Decl. of Lesley Rivers (Rivers Decl.), Ex. 20, ¶¶ 14-18; Decl. of Sarah Norton (Norton Decl.), Ex. 21, ¶¶ 13-15; Decl. of Patrick Brosnan (Brosnan Decl.), Ex. 22, ¶¶ 12-17; Decl. of Valerie Clodi (Clodi Decl.), Ex. 23, ¶¶ 10, 14.

The harm is irreparable because these programs operate on a reimbursement model and rely on predictable access to federal funds. Schools and community partners cannot lawfully continue services without assurance of reimbursement, and thus must immediately stop operations, terminate staff, and cancel contracts. Stanton Decl., Ex. 18, ¶ 29. Indeed, some have already begun doing so. Rivers Decl., Ex. 20, ¶ 17. Once staff are laid off and services are discontinued, restarting them is not a simple matter of restoring funds. Hiring, background checks, training, restoring community networks, and rebuilding service delivery infrastructure would take months or years, effectively extending the harm well beyond any eventual merits determination. Guilmette Decl., Ex. 19, ¶¶ 13-14; Rivers Decl., Ex. 20, ¶ 16; Norton Decl., Ex. 21, ¶ 14; Brosnan Decl., Ex. 22, ¶ 17; Clodi Decl., Ex. 23, ¶14.

The loss of funding will also cause immediate and irreparable injury to Plaintiffs' organizational capacity. ACT Now will be forced to eliminate core staff positions and dismantle its statewide technical assistance, compliance, and oversight infrastructure, rendering it unable to support subgrantees, manage data and reporting obligations, or coordinate statewide learning

networks. Stanton Decl., Ex. 18, ¶ 30. Even if Plaintiffs ultimately prevail, the collapse of this infrastructure cannot be fully remedied by monetary relief.

Equally significant is the irreparable harm to relationships and trust, which are central to the FSCS model. Courts consistently recognize that loss of goodwill, reputational injury, and damage to long-standing collaborative relationships constitute irreparable harm because they cannot be easily quantified or repaired after the fact. *DM Trans, LLC v. Scott*, 38 F.4th 608, 621 (7th Cir. 2022); *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021).

Plaintiffs' grants support long-term, relationship-based partnerships among schools, families, community organizations, and state-level intermediaries. Abrupt termination mid-year will fracture trust with school districts, parents, and community partners; undermine ACT Now's credibility as a reliable intermediary; and permanently damage partnerships that have taken years to build. Guilmette Decl., Ex. 19, ¶¶ 13-14; Rivers Decl., Ex. 20, ¶ 16; Norton Decl., Ex. 21, ¶ 14; Brosnan Decl., Ex. 22, ¶ 17; Clodi Decl., Ex. 23, ¶ 14.

By contrast, the government would suffer no cognizable harm from the requested injunction. Plaintiffs do not seek the release of new funds or an expansion of the awards through this injunctive relief. A no-cost extension would merely preserve the status quo by allowing continued access to carryover funds during the pendency of reconsideration and judicial review. Preventing the immediate dismantling of federally funded programs while the legality of the Department's action is adjudicated imposes no meaningful burden on the government and avoids irreversible harm to Plaintiffs, their partners, and the communities they serve.

**III.    The Balance of Equities and Public Interest Strongly Favor TRO Relief**

The preservation of essential services pending reconsideration and judicial review outweighs the Department's interest in shutting down the grant projects at the end of the budget

period. The Department chose to wait until December 12, 2025, to issue the Notices, despite knowing that the budget periods for these grants ended on December 31, 2025, and that grantees were entitled to request reconsideration of these non-continuations. By notifying grantees just nineteen days before the end of the budget period and then denying Plaintiffs' reconsideration requests just two days before funds expire, the Department all but guaranteed that there would not be time to resolve any legal challenges before the grants were effectively terminated.

This relief avoids mooting judicial review by allowing funding to expire and therefore making it impossible for the courts to grant relief after December 31, 2025, while the granting of a no-cost extension would, by definition, not cost the Department any additional funding. Instead, the funds would remain in their current legal posture until Plaintiffs' claims are resolved. Absent such relief, however, Plaintiffs will be irreparably damaged regardless of the outcome of any review. The public interest here lies in sustaining congressionally authorized and funded programs and ensuring the continuity of educational and wraparound services while litigation is pending.

### IV. The Court has the Authority to Issue Requested Relief

The Court has the authority to extend the period of availability for FY 2025 funds. Courts have the power "to order that funds be held available beyond their statutory lapse date if equity so requires." *Washington v. United States Dep't of Educ.*, 2025 WL 3486895, at *3 (9th Cir. Dec. 4, 2025); *see also Nat'l Ass'n of Reg'l Councils v. Costle*, 564 F.2d 583, 588 (D.C. Cir. 1977).

### V. Request for Injunctive Relief for Similarly Situated FSCS Grantees

Plaintiffs respectfully request that the Court afford preliminary relief on an emergency, program-wide basis to all similarly situated FSCS grantees that received notices of non-continuation for awards with funds set to expire on December 31, 2025. Specifically, Plaintiffs

ask that the Court order the Department to grant a no-cost extension, extend the period of availability for these funds, and enjoin the Department from repurposing or otherwise making unavailable these funds. This relief would be done solely to preserve the status quo while the serious procedural and legal defects underlying the non-continuation decisions are addressed. All affected grantees are identically situated: none seeks the disbursement of new funds, increased funding, or preferential treatment over other grantees. Because the requested relief merely maintains existing awards temporarily and does not reallocate or compete for limited federal resources, there is no conflict of interest among grantees, and uniform relief is both equitable and necessary to ensure that similarly situated entities are treated alike and that their legal rights are not mooted by the passage of time.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant its request for a TRO.

Dated: December 29, 2025                                    Respectfully Submitted,

/s/ *Jocelyn Skinner*                                       /s/ *Aneel Chablani*
Jocelyn (Josie) E. Skinner*                                 Aneel L. Chablani (No. 6242658)
Emily K. Merolli*                                           Beatriz A. Diaz-Pollack (No. 6274809)
SLIGO LAW GROUP, PLLC                                       Michael R. Ortega (No. 6339469)**
1717 K St. NW, suite 900                                    Chicago Lawyers' Committee for Civil
Washington, DC 20006                                        Rights
Tel: (202) 888-2084                                         25 E. Washington St., Ste. 1300
josie@sligolawgroup.com                                     Chicago, IL 60602
emily@sligolawgroup.com                                     Telephone: (312) 630-9744
                                                            Facsimile: (312) 630-1127
                                                            achablani@clccrul.org
                                                            bdiaz-pollack@clccrul.org
                                                            mortega@clccrul.org

Attorneys for Metropolitan Family Services and Action for Children and Teens Now (ACT Now) Coalition

*Pro hac vice motion forthcoming*
**Application for admission pending*