# Exhibit 17

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AFTERSCHOOL FOR CHILDREN AND TEENS NOW (ACT NOW) COALITION and METROPOLITAN FAMILY SERVICES<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION and LINDA McMAHON, in her official capacity as Secretary, U.S. Department of Education,<br><br>Defendants. | Case No. |

### DECLARATION OF SUSAN STANTON

Pursuant to 28 U.S.C. § 1746, I, Susan Stanton, declare as follows:

1. I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2. This declaration is submitted in support of Plaintiff's Complaint and Request for a Temporary Injunction.

3. I am the Executive Director of Afterschool for Children and Teens Now (ACT Now), and I have served in this capacity since 2017. As Executive Director, I am responsible for the execution of ACT Now's mission, am the bridge between our Leadership Team and staff, and oversee strategic planning, fundraising, financial management, human resources duties, and public relations and community relationship building. I manage ACT Now's relationships with its fiscal sponsor, Metropolitan Family Services (MFS), subgrantee community partners, and other partner organizations. I oversee ACT Now's budget and operations, including securing and

1

maintaining funding, managing staff, ensuring legal compliance, and working with our Leadership Team to ensure that the actions of the organization are consistent with its mission.

4. As Executive Director, I have personal knowledge of the matters set forth below or have knowledge of the matters based on my review of information and records gathered by my staff.

5. I submit this declaration in connection with two letters sent via email on the evening of Friday, December 12, 2025, to Lesley Rivers, ACT Now Director of Community Schools, by Kirsten Baesler, Assistant Secretary of Elementary and Secondary Education, U.S. Department of Education (Department). In those letters, Assistant Secretary Baesler announced that the Department had determined not to continue our two FY 2023 Full-Service Community Schools state scaling grants, effective at the end of our current grant budget period.

6. Each of the notices of "non-continuation" cited to language from our grant application, including our statement of mission and values, and responses to questions related to the priorities of the prior administration, that the Department claims as evidence that the grants are inconsistent with, and no longer effectuate, the "best interests of the Federal Government".

7. In the letters, Assistant Secretary Baesler acknowledged that under 34 C.F.R. § 75.253(g), ACT Now could request reconsideration of this decision by submitting information and documentation within 7 calendar days. ACT Now submitted its requests for reconsideration on Friday, December 19, 2025.

8. The current grant budget period ends on December 31, 2025, meaning that ACT Now will lose access to federal funds for purposes of implementing our grant programs less than three weeks after the Department first provided notice.

9. The Department has not provided a response to ACT Now's request for reconsideration. Instead, in the initial notice of non-continuation letters, the Department indicated that ACT Now would not be given a no-cost extension to continue program operations using carryover funds, and would be required to begin to discharge our closeout responsibilities and promptly refund all unobligated funds that we are not authorized to retain.

**Background of ACT Now**

10. ACT Now is a statewide unincorporated organization based in Illinois that works to expand access to high-quality out-of-school time, community school, and youth development programs. ACT Now serves as a policy advocate, technical assistance provider, and intermediary. We support schools, districts, and community-based organizations to implement evidence-based programs that improve student outcomes, strengthen family engagement, and support workforce readiness.

11. ACT Now has a long-standing relationship with the Illinois State Board of Education, state agencies, school districts, and national partners. The organization has played a central role in scaling community schools and out-of-school time initiatives statewide, particularly in both rural and urban/suburban communities with the highest levels of need. ACT Now operates with braided funding across program areas, meaning staff expertise and infrastructure are shared across multiple initiatives to maximize impact and efficiency.

12. ACT Now is the statewide afterschool network for Illinois. The statewide afterschool networks were started with seed funding from the C.S. Mott Foundation. Mott sought to make an investment in afterschool to support and expand afterschool programs when the 21st Century Community Learning Centers program began at the federal level. Illinois was one of the

first networks beginning in 2002,[1] with networks established in each state by 2016. Over time, we expanded our work from just afterschool to community schools. This was a nature outgrowth of building on all of our excellent school and community partners.

13. After an extensive statewide search, MFS became ACT Now's fiscal sponsor in 2017, providing fiduciary oversight, financial management, and other administrative services to help build the capacity of projects that have not yet been recognized as tax-exempt under Internal Revenue Code Section 501(c)(3). In essence, MFS serves as the administrative "home" of ACT Now. Given that ACT Now is a smaller organization, we utilize a fiscal sponsorship by outsourcing certain services to allow us to focus on our substantive work and supporting afterschool providers.

14. ACT Now pays MFS a fiscal sponsor fee, as allowed by the terms of our FCSC grants, in order to cover the following services: accounting, audit, liability insurance, employment liability insurance, property and casualty insurance, workers' compensation insurance, unemployment claims, copier, scanning, fax, postage, full use of conference rooms and common area, payroll and benefits, senior management oversight, office furniture, human resources administration, and IT infrastructure. The full cost of paying for all of these services as a separate organization is far more than the fee we pay.

15. Outside of the services outlined in the fiscal sponsorship agreement, ACT Now also receives many in-kind benefits by partnering with MFS, one of the oldest social services providers in the state. MFS has over 1,000 employees and because of this size is able to provide in-house support in key areas, which have supported ACT Now efforts throughout the years, including with regard to grants management, communications, graphic design, email software,

---

[1] The Illinois network has changed names and fiscal sponsors over the years but has existed since 2002.

4

web development, fund development, and event planning. MFS also has offices throughout the Chicagoland area and has provided ACT Now space for trainings on multiple occasions.

**ACT Now Full-Service Community Schools Program**

16. The FSCS program is a federal initiative administered by the Department that supports locally driven partnerships between schools and community organizations to provide integrated academic, health, social, and family services. The program emphasizes parent voice, local control, and alignment with workforce and community needs.

17. ACT Now is the holder of two federal FSCS grants through its fiscal sponsor, MFS. These grants are state-scaling grants, designed to expand and sustain community school infrastructure across Illinois rather than serve a single district.

18. ACT Now applied for the FSCS grants during the applicable federal competition period in 2023. We followed all Department of Education requirements and available guidance, and wrote our grant to be consistent with the statutory purpose of the FSCS program, other applicable statutory and regulatory authorities, executive orders, and final Department administration priorities in effect at the time of the application, and guidance that emphasized equity, family engagement, and community partnerships.

19. ACT Now received notices of grant awards on November 28, 2023, and we are currently finishing up the second year of our five-year grant award.

20. During our application and throughout our award period, ACT Now has communicated with the Department through standard grant channels, including with Department staff, program officers, and regular written correspondence. This includes two Annual Performance Reports submitted for each grant in August 2024 and August 2025. Prior to December 12, 2025, the Department had not expressed any concerns during the grant review,

5

award, or early implementation phases that would have provided ACT Now with notice of and an opportunity to revise or cure any perceived deficiencies.

21. The Department's notice of non-continuation letters cite to language from the applications that are tied to ACT Now's mission statement, statutorily required GEPA statement,[2] and proposed activities that were not implemented as part of this grant project. The Department did not identify any concerns related to any of the programs implemented or run by ACT Now and its subgrantees using FSCS grant funds.

22. The combined total of ACT Now's two FSCS grants is approximately $18.5 million annually, with funding originally awarded for multiple years. Loss of continued funding would eliminate more than $55 million in expected support over the remaining grant period.

23. ACT Now functions as the statewide intermediary and program lead. Key responsibilities include: selecting and supporting subgrantee school districts and community-based partners; providing technical assistance, professional development, and continuous improvement support; coordinating statewide learning communities and data collection; and ensuring compliance, reporting, and fiscal oversight in coordination with MFS.

24. The grants fund 16 school districts and 32 schools across Illinois, prioritizing communities with significant economic, academic, and social needs. Through these programs, ACT Now-supported community schools serve approximately 19,000 students and their families annually.

25. ACT Now measures program impact by collecting and analyzing data from community partners related to a variety of factors, including: student attendance, engagement,

---

[2] Section 427 of the General Education Provisions Act, 20 U.S.C. § 1288a, requires applicant grantees to submit a statement as part of their grant application that they will "equitable access to, and equitable participation in, the project or activity to be conducted" using grant funds.

and academic indicators; family particip30ation and parent leadership development; stability of staffing and service coordination within schools; strength of school-community partnerships; and qualitative outcomes reported by districts and families.

26. ACT Now's subgrantees include public school districts, individual schools, and nonprofit partners that are embedded in school communities. These partners provide: school-based mental health and behavioral health services; family engagement and parent leadership programming; expanded learning and afterschool programs; workforce-connected learning and career exposure; and coordination of wraparound services that are tailored to locally-identified needs.

**Immediate and Irreparable Harm**

27. The Department's notice of non-continuation, without a no-cost extension for use of carryover funds, effectively terminates ACT Now's FSCS grants on December 31, 2025, even through the grant was awarded for a multi-year period and the appeal process remains unresolved.

28. Beginning closeout activities and losing access to federal program funds would cause immediate and irreparable harm. FSCS funds are primarily used for direct program costs, not merely administrative expenses.

29. Schools and community partner organizations cannot legally continue services funded by the grants without the ability to be reimbursed. Staff positions at schools and community partner organizations that are funded through the grant would be terminated before any judicial appeal process could be resolved. Once positions are terminated, the hiring and background process involved in restoring these positions could take months, effectively shutting down program operations beyond any final decision.

7

30. Once access to FSCS grant funds is lost, ACT Now, its school and community partners, and the relationships central to successful community schools would suffer significant, immediate, and irreparable harm:

    a. ACT Now cannot maintain staffing, contracts, or subgrantee agreements necessary to operate the program. ACT Now would immediately lose 13 staff positions, and would see a collapse of statewide technical assistance and compliance infrastructure. We would be unable to manage subgrantee reporting and oversight.

    b. ACT Now and its community partners would experience structural harm through the dismantling of Illinois' statewide FSCS system and learning networks, loss of trained coordinators that are embedded in schools, and the termination of our multi-year service models mid-implementation.

    c. ACT Now would suffer relationship harm, including: the breakdown of trust with districts, families, and community partners; loss of parent engagement and leadership continuity; and significant damage to ACT Now's credibility as a statewide intermediary.

    d. Community partners rely on predictable funding and guaranteed reimbursement to maintain on-site coordinators and service staff, contracts with mental health providers and community organizations, and family engagement and workforce programming aligned to the school year.

    e. Loss of funding will force our partners to terminate staff, end services in the middle of the school year, and breach agreements with schools and families.

    f.   School and organizational budgets have been set for the entire 2025-2026 school year, and do not have flexibility to cushion the significant impacts of these losses through the use of alternative funding streams.

    g.   Even if a full judicial appeal was successful, rebuilding the complex program infrastructure would take months or years, effectively undoing the progress made thus far under the grant.

    h.   The FSCS model is relationship-based. Suddenly closing the program would deeply erode carefully constructed and maintained community trust, including relationships with community partners, school districts, and parents, and would take significant time and effort to restore, shifting priorities away from direct program implementation. We would lose trust between schools and families, long-term partnerships between districts and community providers, parent leadership structures that have taken years to build, and cross-agency collaboration and coordination. Once these relationships are disrupted, they cannot be quickly or easily reestablished, even if funding is later restored.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on December <u>29</u>, 2025.

_[signature]_

Doc ID: dc7b0234fa0deeca2f5a90200a47dcb1e4f7b173