**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AFTERSCHOOL FOR CHILDREN AND TEENS NOW (ACT NOW) COALITION and METROPOLITAN FAMILY SERVICES<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION and LINDA McMAHON, in her official capacity as Secretary, U.S. Department of Education,<br><br>    Defendants. | Case No. 25-cv-15704 |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

## I.    INTRODUCTION

This case centers on the United States Department of Education's unlawful non-continuation of Plaintiffs' two Full-Service Community School state-scaling grants. Plaintiffs allege that by subverting the substantive and procedural requirements for continuation awards, the Department violated the Administrative Procedure Act (APA) and the U.S. Constitution. The Department's motion mischaracterizes Plaintiffs' claims and requested relief and conflates grant terminations with non-continuations. Because Plaintiffs seek prospective, equitable relief—not monetary damages—this action falls outside the Tucker Act. Plaintiffs respectfully request that the Court deny the Department's Motion to Dismiss.

1

## II.    BACKGROUND

The Full-Service Community Schools ("FSCS") grant program provides critical support to families nationwide. Congress established the program through the Every Student Succeeds Act in 2015 to "significantly improve the academic and developmental outcomes of children living in the most distressed communities." 20 U.S.C. § 7271.

In June 2023, Plaintiffs applied for two multi-year FSCS grants. The Department awarded Plaintiffs the grants, each with a five-year project period running from January 1, 2024, through December 31, 2028. Dkt. 3 Ex. 5. Regulations plainly distinguish between project periods and budget periods: after the first year of funding, an agency must annually assess grantee performance and decide whether to make a continuation award for each subsequent budget period. 2 C.F.R. § 200.1 (Uniform Guidance); 34 C.F.R. § 75.250–53 (Department regulations). Each of Plaintiffs' Grant Award Notifications (GANs) states expressly that funding is promised only for that year's budget period. Dkt. 3 Ex. 5.

In both 2024 and 2025, Plaintiffs implemented their programs in accordance with all applicable requirements, submitted all required performance and financial reports, made measurable progress towards their project objectives, and received no notice of noncompliance. Plaintiffs made measurable progress in those two years, supporting 19,000 students and families across Illinois with wide-ranging, community-driven services such as tutoring, transportation, health care, food pantries, school safety, and more. Dkt. 3 Ex. 1 ¶¶ 23–26; Dkt.3 Ex.2 ¶¶ 10–12.

The Department's regulations define the substantive and procedural requirements for granting or denying continuation awards, including the factors on which the Secretary bases their decision. *See* 34 C.F.R. § 75.253(a)–(b). The Department's continuation evaluation process is not based on the grant application, but on the grantee's progress in implementing the grant. Dkt. 3 Ex. 3 ¶ 26.

Based on Plaintiffs' 2024 performance, the Department made a continuation award for the FY25 budget period, which ran from January 1, 2025, through December 31, 2025. Dkt. 3 Ex. 6. Plaintiffs made continued progress and timely submitted their Annual Progress Report in August 2025.

Less than three weeks before the end of the budget period, the Department issued Notices of Non-Continuation for both of Plaintiffs' grants. Dkt. 3 Ex. 7. The Department cited only language from the original grant applications and failed to identify any programmatic or compliance concerns with Plaintiffs' performance. Instead, the Department determined not to continue the projects because they "reflect the prior Administration's priorities and policy preferences and conflict with those of the current Administration," and are "therefore inconsistent with, and no longer effectuate[], the best interest of the Federal government." *Id.*

The Department advised Plaintiffs of the right to request reconsideration within seven calendar days. Plaintiffs timely submitted their requests, together with supporting evidence, on December 18, 2025. Dkt. 3 Ex. 8.

On December 29, 2025, two days before the budget period ended, the Department denied Plaintiffs' request for reconsideration of both grants. Dkt. 3, Ex.

3

23. The Department neither addressed Plaintiffs' submitted evidence nor explained its exclusive reliance on their application materials. Instead, the Department cited new portions of the original applications, leaving Plaintiffs no opportunity to respond to the newly flagged language. Dkt. 1 ¶¶ 38, 57–59.

## III. LEGAL STANDARD

When deciding a motion under Rule 12(b)(1), a court must determine whether the defendant raises a factual or facial challenge to subject-matter jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Where, as here, the defendant raises a facial challenge, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.; Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). The Court's review is limited to the complaint and materials referenced therein, and it does not resolve factual disputes or weigh evidence. *Silha*, 807 F.3d at 173.

Plaintiffs bear the burden of establishing subject-matter jurisdiction. *Ctr. For Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

## IV. ARGUMENT

This motion presents a straightforward question: are Plaintiffs' claims for prospective, non-monetary relief rightly before this court, or are they actually "disguised contracts claims" for which the Tucker Act grants the Court of Federal Claims exclusive jurisdiction? Because Plaintiffs do not seek money damages and do not rely on any money-mandating source of law, the Court of Federal Claims would

4

lack jurisdiction over these claims. Accordingly, the Tucker Act does not apply and cannot divest this Court of jurisdiction under 28 U.S.C. § 1331.

## A. Grant Terminations and Grant Non-Continuations are Distinct Agency Actions

In its Motion to Dismiss, the Department incorrectly conflates grant terminations with grant non-continuations in stating its facts and arguments,[1] referring to Plaintiffs' grants first as having been "non-continued" and then later claiming that "Plaintiffs ask the court to unwind the Department's grant terminations." Mem. ISO Mot. to Dismiss at 5. The Department itself clearly distinguishes between these terms: "[t]here are two different review processes that the department uses if a grantee is terminated or discontinued that are based on different authorities and have different timing and responses in implementation." U.S. Department of Education, *Department Grant Discontinuation and Termination Processes*, https://www.ed.gov/grants-and-programs/manage-your-grant/department-grant-discontinuation-and-termination-processes.

Plaintiffs' grants were discontinued, not terminated. That distinction matters here because Tucker Act jurisdiction turns on whether a claimant seeks to enforce a contract with or otherwise recoup money damages from the Government. *See infra* Part IV.C. Whereas grant terminations are an immediate withholding of previously awarded funds, discontinuations are a statement by the Department that it does not intend to make grant funds available to the grantee in the future and are therefore

---

[1] The Department also refers to non-continuations as "discontinuations."

5

*not* a withholding of funds. *See* 34 C.F.R. § 75.253(i) ("[a] decision by the Secretary…to not make a continuation award…does not constitute a withholding under section 455 of GEPA"). A non-continuation decision does not breach contractual obligations to provide funds per the terms of the grant agreement; it signals a refusal to fund further. A non-continuation decision therefore does not give rise to any enforceable right to payment and cannot support a claim within the Tucker Act.

**B. The Court has Jurisdiction under U.S. Const. art. III, § 2; 28 U.S.C. § 1331; and the APA**

Plaintiffs allege that when the Department non-continued their grants, the Department violated the Administrative Procedure Act, unlawfully exercised Congressional authority contrary to the Spending Clause and the Separation of Powers, and infringed on Plaintiffs' rights under the First and Fifth Amendments of the Constitution. Dkt. 1 at 14–25 (Causes of Action). Plaintiffs seek relief declaring the Department's conduct unlawful, ordering the Department to follow the standards codified in statute and its own regulations, and enjoining it from relying on unlawful conduct in future dealings with Plaintiffs. Dkt. 1 at 25–27 (Prayer for Relief).

Because these claims for prospective equitable relief arise under federal law, and the APA waives sovereign immunity for challenges to unlawful agency action "seeking relief other than money damages," 5 U.S.C. § 702, this Court has subject-matter jurisdiction over Plaintiffs' action. *Cf. Bowen v. Massachusetts*, 487 U.S. 879, 909–10 (1988) (analyzing how the APA and Tucker Act interact when plaintiffs seek monetary and non-monetary relief); *see also Great-West Life & Annuity Ins. Co. v.*

6

*Knudson*, 534 U.S. 204, 212 (2002) (characterizing *Bowen* as a suit "not merely for past due sums, but for an injunction to correct the method of calculating payments going forward.")

### C. The Tucker Act Does Not Apply because Plaintiffs Do Not Seek Monetary Damages

The Tucker Act is a grant of jurisdiction and waiver of sovereign immunity for money damages claims against the federal Government. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). The Tucker Act grants district courts and the Court of Federal Claims concurrent jurisdiction over claims seeking up to $10,000 in damages, 28 U.S.C. § 1346, and exclusive jurisdiction to the latter for claims seeking a greater amount. 28 U.S.C. § 1491.

Because the Court of Federal Claims' jurisdiction is limited to monetary claims, it does not extend to the type of prospective relief Plaintiffs seek here. Jurisdiction under the Tucker Act is limited to claims seeking "actual, presently due money damages from the United States." *United States v. Testan*, 424 U.S. 392, 398 (1976) (collecting cases). The Federal Circuit en banc has since affirmed that "the absence of a money-mandating source" of a plaintiff's claim is "fatal to the court's jurisdiction under the Tucker Act." *Fisher*, 402 F.3d at 1172; *accord. Columbus Regional Hospital v. United States*, 990 F.3d 1330, 1350 (Fed. Cir. 2021) (affirming the Court of Claims' jurisdiction because "the claims in this case are predicated on breach of contract, a cause of action that is exclusively assigned to the Court of

Federal Claims by the Tucker Act *insofar as the claimant seeks damages in excess of $10,000*") (emphasis added).

The Federal Circuit has long held that the sources of Plaintiffs' claims—the APA, the Due Process Clause, the Separation of Powers, and the First Amendment—are insufficient bases for Tucker Act claims "because they do not mandate payment of money by the government." *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995).[2]

Because the Court of Federal Claims would lack jurisdiction over these claims, the Tucker Act does not divest this Court of jurisdiction. *See Tootle v. Sec'y of Navy*, 446 F.3d 167, 177 (D.C. Cir. 2006) ("There cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act.")

The Supreme Court's recent emergency orders addressing grant terminations confirm that the Tucker Act turns on whether the relief sought would require a court to order the payment of money. *See Dep't of Educ. v. California*, 604 U.S. 650 (2025); *Nat'l Inst. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) ("*APHA*"). In *California*, plaintiff grantees sought reinstatement of *terminated* grants under the terms of their awards; the district court ordered the Department "to pay out past-due grant obligations" owed under the terms of those awards. *California*, 604 U.S. at 650. Here, by contrast, Plaintiffs challenge grant *non-continuation* decisions; vacating a

---

[2] The Court of Federal Claims routinely dismisses claims under the First Amendment, Fifth Amendment, and the APA for lack of jurisdiction, citing the absence of a money-mandating source. *See, e.g., Morris v. United States*, No. 25-933, 2026 WL 654169 at *7–8 (Ct. of Fed. Cl. Mar. 5, 2026) (unpublished); *Pollitt v. United States*, No. 25-1925, 2026 WL 410699 at *3 (Ct. of Fed. Cl. Feb. 13, 2026) (unpublished).

8

non-continuation decision does not "enforce any obligation to pay money." *Id.* at 651. *See also Washington v. Dep't of Educ.,* 161 F.4th 1136, 1139–40 (9th Cir. 2025) ("vacatur of the allegedly unlawful discontinuation decisions . . . does not cause any grant to be renewed because grant continuances are not automatic").

The Supreme Court's split ruling in *American Public Health Association* reveals nuances in the jurisdictional analysis similar to those here. There, plaintiffs sought monetary relief, challenging both their grant terminations and allegedly improper agency guidance. *APHA,* 145 S. Ct. at 2661 (Barrett, J., concurring). Four Justices would have sent both challenges to the Court of Federal Claims, citing *California*;[3] four would have kept both in the District Court. *Id. at* 2660. In her deciding concurrence, Justice Barrett endorsed a "two-track" approach: "plaintiffs' challenges to the grant terminations belong in the CFC, and their APA challenges to the guidance belong in district court." *Id.* at 2662 (Barrett, J., conc.). Only the District Court, however, has jurisdiction over the claim seeking to vacate the agency guidance because "[v]acating the guidance does not reinstate terminated grants." *Id.* at 2661 (Barrett, J. conc.).

The reasoning of *APHA* instructs that claims against the United States seeking retrospective, monetary damages and claims seeking prospective, equitable relief have distinct sources, remedies, and forums. Because Plaintiffs here seek the latter, this Court has jurisdiction. *See City of Chicago v. U.S. Dep't of Just.*, No. 25-13863,

---

[3] Two of these Justices considered the plaintiffs' underlying request for monetary relief as dispositive. *Id.* at 2664–65 (Gorsuch, J., and Kavanaugh, J., concurring in part and dissenting in part) ("In both cases, the alleged right to payment stems from the government's refusal to pay promised grants according to the terms and conditions that accompany them.")

9

2026 WL 114294 at *9–11 (N.D. Ill. Jan. 15, 2026); *see also City of Chicago v. Noem*, No. 25-12765, 2025 WL 3251222 at *12–13 (N.D. Il. Jan. 23, 2026).

### D. Plaintiffs' Claims Are Not Contractual

Plaintiffs do not concede that their grants constitute contracts for purposes of Tucker Act jurisdiction.[4] However, even assuming arguendo that Plaintiffs' grants constitute contracts, the presence of a contractual relationship is not dispositive. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). The Department suggests that any claim requiring some reference to a contract is necessarily a "disguised contract claim" directly within the Tucker Act: an analysis the *Megapulse* court squarely rejected. *Id.* at 967–68.

Even if a district court must resolve a contract-related issue, it "retain[s] the power to make rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds." *Id.* at 969–70. Courts must determine whether a claim "sounds in contract" by examining two factors: (1) "the source of the rights upon which the plaintiff bases its claims," and (2) "the type of relief sought (or appropriate)." *Id.* Both factors confirm that Plaintiffs' claims are not contract claims subject to Tucker Act jurisdiction.

---

[4] Courts have long looked to Congress's mutually exclusive definitions of these terms, codified at 31 U.S.C. § 6303–04, for Tucker Act purposes. *See Pacito v. Trump*, Nos. 25-1313, 25-1939, 2026 WL 620449 at *55–59 (9th Cir. Mar. 5, 2026).

10

### 1. Prong One: The Source of Plaintiffs' Rights Is Constitutional, Statutory and Regulatory, Not Contractual.

Plaintiffs' claims arise from the legal provisions governing continuation decisions, not from a breach of their prior grant awards. Indeed, all of Plaintiffs' claims can be adjudicated without referencing a single term in the awards. Plaintiffs do not allege that the Department's conduct was improper because it withdrew funding in violation of a *previous* grant award.

Nor could they. The Grant Award Notifications (GANs) do not apply to the performance period at issue (2026). Each GAN clearly states that "this award supports only the budget period" listed, and that amounts slated for future years "*do not bind the Secretary* to funding the award for these periods or for the specific amounts shown." (emphasis added). Mem. ISO Mot. to Dismiss, Ex. A at 4, Ex. B at 4. Plaintiffs do not challenge any of the Secretary's determinations as to the 2024 and 2025 budget periods.[5]

Rather, Plaintiffs challenge only the decision not to continue the grants going forward, which the governing regulations treat as a separate determination. 34 C.F.R. § 75.250–51; *see also id.* ("the recipient will be notified of *specific future funding actions* that the Secretary takes for this award") (emphasis added). Those prospective determinations are governed not by the GANs' terms but by the

---

[5] The GANs' express disclaimers of entitlement to future funding are independent bases for rejecting the Government's Tucker Act arguments. The GANs the Department identifies as the controlling contracts could not support a claim for money "lost" from future awards, nor could the Court of Federal Claims review the Department's conduct, determine whether it violated the relevant laws, and enjoin it from doing so in the future.

11

Constitution, statutes, and regulations. What makes the Department's non-continuation improper—i.e., the source of the rights upon which the plaintiff bases its claims—are the laws governing what constitutes proper agency action. Dkt. 1 at 14–25 (Causes of Action). That Plaintiffs' claims arise in the context of a GAN describing a multi-year project and one-year budget periods does not convert them into contract claims. *See Evers v. Astrue*, 536 F.3d 651, 661 (7th Cir. 2008) (describing claims related to future bids for federal contracts as not within the Contracts Disputes Act despite rejection of those bids because of a prior contract termination); *accord. Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 155 F.4th 1099, 1100 (9th Cir. 2025).

The Department's supporting cases uniformly involve claims, unlike Plaintiffs' here, seeking payment of money or enforcement of contractual obligations. In *Bennett v. New Jersey*, 470 U.S. 632, 638 (1985), despite acknowledging a contract rationale for the Department's right to recoup misused federal funds, the Supreme Court described its holding as "based on the statutory provisions" of Title I.[6] In *Columbus Regional Hospital,* the plaintiffs sought millions in previously awarded disaster relief, alleging breaches of contract and illegal exaction. 990 F.3d at 1336–37. *See also Spectrum Leasing Corp*, 764 F.2d at 894 ("Here, Spectrum's right to the hardware payments arose only upon creation and satisfaction of its contract with the

---

[6] Indeed, *Bennett*'s holding that "changes in substantive requirements for federal grants should not be presumed to operate retroactively" and that federal grant obligations generally should be determined by reference to the law in effect when the grants were made" supports Plaintiffs' claim that the Department's retroactive application of new standards was likely unlawful. *Bennett*, 470 U.S. at 638; Dkt. 1 ¶¶ 79–81.

government."); *Up State Federal Credit Union*, 198 F.3d 372, 376 (2d. Cir. 1999) ("Unlike the plaintiff's propriety rights in *Megapulse*, the Credit Union's right in this case stems from no independent, non-contractual source."). These cases are thus distinguishable from Plaintiffs' claims seeking non-monetary relief.

## 2. Prong Two: Plaintiffs Seek Equitable Relief, Not Specific Performance.

As for the second *Megapulse* prong, the Department's analysis fails upon a plain reading of Plaintiffs' requested relief. Plaintiffs do not seek specific performance of past years' grant awards nor any "relief designed to enforce any obligation to pay money pursuant to [their] grants." *APHA*, 145 S.Ct. at 2660. Further, Plaintiffs do not seek to enjoin the Department from "denying continuation funding" generally, Mem. ISO Mot. to Dismiss at 3, but from doing so "based on extra-statutory, retroactive, or viewpoint-based criteria not authorized by Congress or disclosed through lawful rulemaking." Dkt. 1 at 26 (Prayer for Relief ¶ G).

Far from specific performance, what Plaintiffs seek from this court is declaratory and injunctive relief ensuring "the right to be fairly considered." *Evers*, 536 F.3d at 661. Plaintiffs allege that the non-continuations were unlawful agency actions. Plaintiffs request that those actions be vacated and that the Department conduct a new continuation review process in accordance with applicable law. Dkt. 1 ¶¶ 54–62. Neither form of relief would enforce a "contractual obligation to pay money" or result automatically in the disbursement of funds. *California*, 604 U.S. at 651. While Prayer for Relief paragraphs E and G contemplate that the Department could

13

award new funding if a lawful continuation review results in a favorable decision, Plaintiffs do not seek an order requiring payment of any particular amount, or one based on finding that the Department owes Plaintiffs any amount. *Cf. Bowen*, 487 U.S. at 909–10. Such a result would be a "mere by-product" of this Court's "primary function of reviewing the Secretary's interpretation of federal law." *Id.*

The Department's conflation of non-continuations and terminations elides the distinctions between this case and those the Department cites in support. All but one of the "similar cases involving government grants or contracts" cited by the Department concern grant terminations, not non-continuations, and all are cases in which the plaintiffs directly requested payment of funds. The outlier, *Bd. of Educ. for Silver Consol. Schs. v. McMahon*, 791 F Supp. 3d 1272 (D.N.M. 2025) also concerned a discontinuation decision, but unlike Plaintiffs in this matter, the plaintiff expressly requested funding to which it claimed it was entitled. *Id.* at 1280.

The remaining cases all predate *APHA* and all involve funding terminations. *See Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100 at *5 (4th Cir. June 5, 2025) (staying an injunction "directing the Government to restore Plaintiffs' access to grant funds immediately"); *Vera Inst. of Just. v. U.S. Dep't of Just.*, 805 F. Supp. 3d 12, 18 (D.D.C. 2025) ("Plaintiffs are five organizations that had their awards terminated."); *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 160 (D.D.C. 2025) ("Just days before the hearing . . . State issued two formal notices of termination to the Conference.")[7]; *Solutions in Hometown Connections v. Noem*,

---

[7] This case concerned a cooperative agreement, which is similar to a grant but differs in that a cooperative agreement expects "substantial involvement…between the executive agency

14

No. 25-00885, 2025 WL 1103253 at *1 (D. Md. Apr. 14, 2025) ("In this civil action, the Plaintiffs challenge the decisions . . . to indefinitely freeze, and ultimately terminate, the Grants."). The Department also cites *Massachusetts Fair Housing Center. v. Department of Housing and Urban Development*, No. 25-30041, 2025 WL 1225481 (D. Mass Apr. 14, 2025): another case involving grant terminations in which the plaintiffs expressly sought funding, which the First Circuit remanded to District Court for reconsideration in light of *APHA. Mass. Fair Hous. Ctr. V. U.S. Dep't of Hous. & Urban Dev.*, 159 F.4th 90, 91 (1st Cir. 2025).

When correctly characterized as challenges to grant non-continuations, where plaintiffs seek only equitable relief, the precedent shifts significantly. *See, e.g., Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1139–40 (9th Cir. 2025)*; see also Council for Opportunity in Education v. U.S. Dep't of Educ.*, No. 25-03514, 2026 WL 120984 at *20–22 (D.D.C. Jan. 16, 2026) (finding that "because there is no operative grant agreement that entitles [plaintiff] or its members to funding, there can be no specific performance of that agreement").

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Department's Motion to Dismiss and allow this case to proceed on the merits.

---

and the State, local government, or other recipient when carrying out the activity contemplated in the agreement." *See* 31 U.S.C. 6305; 2 C.F.R. § 200.1.

Dated: March 26, 2026        Respectfully Submitted,

/s/ *Jocelyn Skinner*             /s/ *Michael Ortega*

Jocelyn (Josie) E. Skinner*       Aneel L. Chablani (No. 6242658)
Emily K. Merolli*                  Beatriz A. Diaz-Pollack (No.
SLIGO LAW GROUP, PLLC      6274809)
1717 K St. NW, Ste. 900         Michael R. Ortega (No. 6339469)
Washington, DC 20006          Chicago Lawyers' Committee for
Tel: (202) 888-2084               Civil Rights
josie@sligolawgroup.com       25 E. Washington St., Ste. 1300
emily@sligolawgroup.com       Chicago, IL 60602
                                   Telephone: (312) 630-9744
                                   Facsimile: (312) 630-1127
                                   achablani@clccrul.org
                                   bdiaz-pollack@clccrul.org
                                   mortega@clccrul.org

Attorneys for Metropolitan Family Services and Action for Children and Teens Now (ACT Now) Coalition

* *Admitted pro hac vice*

16

## CERTIFICATE OF SERVICE

I certify that on March 26, 2026, I electronically filed the foregoing document with the Clerk of the court of the United States District court for the Northern District of Illinois, using the CM/ECF filing system, which will forward notice to all counsel of record.


/s/ Michael Ortega
Michael R. Ortega

17