**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CHICAGO TRANSIT AUTHORITY,

      Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION; FEDERAL TRANSIT
ADMINISTRATION; and UNITED STATES OF
AMERICA,

      Defendants.

No. 26 C 3140

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

The Chicago Transit Authority (the "CTA") alleges, pursuant to Title VI, 42 U.S.C. § 2000d, that the Federal Transit Administration (the "FTA"), which is a subagency of the United States Department of Transportation (the "DOT"), has suspended payment on grants for projects to modernize and expand the CTA's train system, in violation of various provisions of the Administrative Procedures Act and the Spending Clause of the United States Constitution. The CTA has filed a motion for a temporary restraining order requiring the FTA to resume the process for payments required by grants. The Court held a hearing on the motion today and orally granted the motion on the record at the end of the hearing. On Defendants' oral motion, and without opposition from the CTA, the Court also orally granted a stay of the TRO until Friday, March 27, 2026, at 10 a.m. This memorandum sets forth the Court's reasons for granting the motion.

## Background

On January 9, 2017, the FTA executed a grant to the CTA for modernization and improvement of its train system, known as the "Red and Purple Modernization Project." *See* R. 1-3. On January 10, 2025, the FTA executed a second similar grant to the CTA, known as the "Red Line Extension Project." *See* R. 1-4. "As a condition of receiving those grants, CTA was required, by both statute and DOT regulation, to set goals for participation by Disadvantaged Business Enterprises, or DBEs, in a portion of the subcontracts needed to carry out the [two grant projects]." R. 1 at 1 (¶ 4).

On October 3, 2025, the DOT issued an interim final rule (the "IFR"), *see* 90 FR 47969-02, which eliminated from DBE program regulations "the decades-old race- and gender- based presumptions of social and economic disadvantage." R. 1 at 19 (¶ 84). "It did so pursuant to legal determinations by DOT and [Department of Justice] that the race- and sex- based presumptions previously embedded in these programs are unconstitutional." *Id.*

In an announcement on its website, the DOT explained that "[t]o continue implementation of [the IFR]," the DOT "sent letters to the [CTA] to inform them that [the two grant projects] are also under administrative review to determine whether any unconstitutional practices are occurring." *See* R. 1-5 at 2. The first letter sent dated October 3, 2025, expressly referenced the IFR and explained the review of the CTA's grants was being implemented "[i]n conjunction with the issuance of the IFR," *see* R. 1-1 at 2, suggesting that IFR was the basis for requiring the review. According to the DOT, these reviews "are intended to ensure no additional federal dollars go

2

towards discriminatory, illegal, and wasteful contracting practices." *Id.* The letters also note that the reviews are "intended to ensure that disbursements . . . are consistent with the Equal Protection principles of the U.S. Constitution, Federal nondiscrimination requirements under civil rights law, including Title VI of the Civil Rights Act, and Executive Order 14173," which is one of the Executive Orders prompting the DOT to issue the IFR. The DOT's letters notified the CTA that "no further disbursements . . . will be made" pending completion of the review. *See* R. 1-1 at 2.

As part of the review, the DOT sought information from the CTA. The CTA alleges it "responded fully to DOT's initial information requests in October 2025, affirming that it had complied with the IFR and that its contracting and employment policies were consistent with federal guidance." R. 1 at 4 (¶ 11). "And in December 2025, DOT informed CTA that its review of the two grants was 'complete' and that the funding would resume as soon as CTA certified its satisfaction of several enumerated conditions." *Id.* The CTA alleges that it has satisfied these conditions, but the FTA has continued suspension of payments under the grants. *See id.* (¶¶ 11-12).

Defendants do not dispute any of these allegations. Furthermore, at the hearing on this motion, Defendants conceded that of the hundreds of grants the DOT has issued to various entities around the country, the DOT has suspended payment pursuant to the IFR and applied it retroactively to existing grants only to entities related to the City of Chicago and the City of New York.

The effect of the IFR and the DOT's reviews is the suspension of the processing of payment of more than $2 billion necessary to continue the two projects that are already in progress. Unless the processing of grant payments is resumed by March 27, 2026, the projects will suffer what is known as "demobilization." *See* R. 14 at 16. According to the CTA's Treasurer and Chief Financial Officer, this means that instead of continuing to move the projects to completion, CTA contractors will be required to spend time and money to take steps "to protect and preserve the work already completed . . . and to ensure it is safe for work to stop." *Id.* And of course, the suspensions of funding will delay completion of the projects and deprive the citizens of the City of Chicago of much needed improvements to their public transportation system, which they have paid for with taxes paid to the federal government.

Defendants represented on the record at the hearing that, for the purpose of this motion, they do not dispute any of these allegations.

On the basis of these facts, the CTA asks the Court to enter an order doing the following:

> (1) declaring that the IFR's retroactive application to CTA's existing grants is unlawful and unconstitutional;
> (2) vacating and setting aside the IFR as retroactively applied to CTA's existing grants;
> (3) postponing the effective date of the IFR's retroactive application to CTA's existing grants pending the conclusion of review procedures; and
> (4) temporarily restraining Defendants, their agents, and anyone acting in concert or participation with Defendants from implementing, instituting, maintaining, or giving effect to the IFR as applied to CTA's existing grants, including by refusing to disburse funding under the CTA's

4

> Red Line Extension and Red and Purple Modernization grants.

R. 8. at 1.

## Analysis

A party seeking a preliminary injunction or temporary restraining order must demonstrate: "(1) that [it] is likely to succeed on the merits, (2) that [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [its] favor, and (4) that an injunction is in the public interest." *Reps. Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720, 729 (7th Cir. 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The final two "factors merge when the government is the party sought to be enjoined." *Stevens v. HHS*, 666 F. Supp. 3d 734, 748 (N.D. Ill. 2023).

## I.  Jurisdiction

Defendants do not oppose the TRO on the merits. Instead, Defendants argue that the Court lacks jurisdiction because the CTA's action "is one for breach of contract regarding funding agreements between the government and CTA," and under the Tucker Act, "a breach of contract action against the federal government must be brought in the Court of Federal Claims." R. 25 at 1. "Whether a claim is in essence a contract claim over which the Court of Federal Claims has exclusive jurisdiction depends on a two-pronged analysis: a court must examine both 'the source of the rights upon which the plaintiff bases [his] claims, and . . . the type of relief sought.'" *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015) (quoting

*Up State Fed. Credit Union v. Walker,* 198 F.3d 372, 375 (2d Cir. 1999) and *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)).

Here, "the source of the rights" for the CTA's claims is Title VI and not the contractual provisions of the grants. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The DOT reviews that have resulted in suspension of the processing of CTA grant payments were undertaken pursuant to Title VI. The IFR that prompted the reviews at issue here was itself issued pursuant to Title VI. *See* 90 FR 47969-02 at 47979 (citing Title VI, 42 U.S.C. § 2000d as authority).

Title VI expressly vests in federal courts jurisdiction to review agency action "terminating or refusing to grant or to continue financial assistance[.]" 42 U.S.C. § 2000d-2. This provision displaces the Court of Federal Claims' exclusive jurisdiction. *See Bowen v. Massachusetts*, 487 U.S. 879, 910 & n.48 (1988) ("[T]hat court's jurisdiction is 'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court."); *see also Maine Cmty. Health Options v. United States*, 590 U.S. 296, 323-24 (2020) (stating that the presence of remedies under other statutes displaces the Tucker Act's exclusivity). Multiple courts have held that the Tucker Act is not "relevant" where a challenge to a funding decision is brought under Title VI. *See President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77, 106 (D.

6

Mass. 2025) ("[T]he Tucker Act's waiver of sovereign immunity" is not "relevant to Title VI, which itself expressly authorizes 'judicial review' of agency action 'terminating or refusing to grant or to continue financial assistance,' including through the APA, in an Article III court."); *see also Am. Ass'n of Univ. Profs. v. Trump*, 2025 WL 3187762, at *32 (N.D. Cal. Nov. 14, 2025) ("[T]he Tucker Act" does not "apply to the claim that the suspensions violated the requirements of Title VI."); *Duxbury Trucking, Inc. v. Mass. Highway Dep't*, 2009 WL 1258998, at *5 (D. Mass. Apr. 29, 2009) (recognizing that APA review is available for DOT's Title VI actions). Finding jurisdiction over these claims also comports with Justice Barrett's controlling opinion in *National Institutes of Health v. American Public Health Association*, which explained that plaintiffs may "seek vacatur of internal agency guidance on arbitrary-and-capricious grounds" in federal court, because the mere fact that the guidance impacts a grant does not somewhere "transform a challenge to that guidance into a claim 'founded . . . upon' contract that only the [Court of Federal Claims] can hear." *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2661 (2025).

"Vacatur of internal agency guidance" is precisely what the CTA seeks here. The CTA asks this Court to declare retroactive application of the IFR to be unlawful and unconstitutional and to thus remove it as a permissible basis for Defendants to take action regarding administration of the CTA's grants. The CTA does not bring claims about payments according to the terms of the grants themselves. Other courts have found that district courts have jurisdiction over similar claims in similar circumstances. *See Illinois v. Vought*, No. 26-cv-1566 (N.D. Ill. Mar. 12, 2026), ECF

No. 63 ("Plaintiffs' challenge is not to grant-by-grant, award-by-award terminations, but instead to agency-wide policies targeting states. That falls outside Tucker Act exclusivity."); *City of Chicago v. U.S. Dep't of Just.*, 2026 WL 114294, at *4 (N.D. Ill. Jan. 15, 2026) ("Plaintiffs seek an order that prohibits [d]efendants from enforcing the Challenged Conditions set forth in the guidance documents. Jurisdiction in this case is thus consistent with *[NIH]*."); *City of Chicago v. Noem*, 2025 WL 3251222, at *4-5 (N.D. Ill. Nov. 21, 2025) (where "the relief sought is only to vacate guidance documents," such as an order "prohibiting DHS … from enforcing provisions of its Standard Terms and Conditions" it is "relief left undisturbed by *[NIH]*," so "[t]he Tucker Act does not apply"); *see also Massachusetts v. Nat'l Insts. of Health,* 164 F.4th 1, 9, 11 (1st Cir. 2026) (jurisdiction over claim that new funding guidance impermissibly applied retroactively properly lay in district court); *Hous. Auth. of City and Cnty. of San Francisco v. Turner*, 2025 WL 3187761, at *9 (N.D. Cal. Nov. 14, 2025) ("[C]ourts have found with near or total uniformity that the district courts have jurisdiction over claims" such as those "involving constitutional and APA claims seeking an injunction against the imposition of allegedly unlawful grant conditions.").

Notably, Defendants' argued in their brief that this Court lacks jurisdiction over the CTA's contract-based claims "even *assuming* jurisdiction exists in the district court to pursue these independent APA claims" which are "directed at the IFR." R. 25 at 17 (emphasis added). And at oral argument, Defendants conceded the Court's jurisdiction over such claims. Defendants argued, however, that even if the Court vacated the IFR, this would not be a basis for Defendants to resume processing grant

payments because, according to Defendants at oral argument, the suspension of payments was not pursuant to the IFR, but for the purposes of reviewing the CTA's process for hiring subcontractors to ensure that it complied with federal antidiscrimination law. This argument, however, is contrary to the DOT's statements in its announcement of the IFR and its letters to the CTA. By its plain terms, the IFR was issued for the purpose of implementing an Executive Order reinterpreting federal antidiscrimination law. And the DOT's letters to the CTA expressly state that the review of the CTA's grants is for the purpose of ensuring compliance with the IFR. The evidence before the Court at this preliminary stage of the case establishes that the IFR is the reason Defendants have suspended payment on the grants. And a determination that retroactive application of the IFR is unlawful would remove it as a lawful basis for the suspension of payment processing. Thus, contrary to Defendants' argument, the CTA's claims seeking vacatur of the IFR are not independent from what Defendants characterize as claims for violation of the grant contract due to lack of payment. The CTA does not seek payment pursuant to terms of the grants. Rather, the only claims in the case seek vacatur of the IFR, which would have the result of requiring resumption of payment, absent some further explanation from Defendants as to why payment should continue to be suspended. Therefore, this Court has jurisdiction over the CTA's claims to vacate retroactive application of the IFR.

## II.   Merits

Having focused their argument on the jurisdictional issue, Defendants offer little opposition to the CTA's arguments on the merits. In light of the lack of opposition, and having reviewed the CTA's briefs and the associated evidence, the Court finds that that CTA is likely to succeed on the merits of their APA claims for largely the reasons set forth in the CTA's briefs. *See* R. 21; R. 27. Nevertheless, the Court briefly reviews the reasons the CTA is likely to succeed on the merits.

Under the APA, agency action must be set aside when it is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). This standard "requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). The agency must "offer[] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made," and the "agency cannot simply ignore an important aspect of the problem." *Ohio v. EPA*, 603 U.S. 279, 292-93 (2024).

### A.   Arbitrary and Capricious

Here, DOT has failed to justify the application of its framework to existing grantees and the freezing of their funding while doing so. Nothing about the concerns raised in the IFR suggests that retroactive application is necessary or reasonable. Defendants' retroactive implementation of the IFR failed to consider the impact of its decision on ongoing projects, reliance by contractors on promises of payments, and reliance by members of the public that public funds would be used in an efficient manner to complete public infrastructure in a timely fashion.

10

Additionally, Defendants decision does not justify imposing penalties on the CTA for simply following former DOT regulations and federal law, which the President and the DOT have now changed. The CTA does not question Defendants' authority to change policy. Nor does this Court. But retroactive application of a new policy is unreasonable absent some reasonable justification that Defendants have not offered here.

Furthermore, the CTA alleges that it has complied with Defendants' review process pursuant to the IFR. Yet, Defendants have not communicated with the CTA regarding the status of the review process since December 2025. The failure to further communicate what the CTA must do to comply with Defendants' new requirements is likely arbitrary and capricious.

Lastly, Defendants have retroactively applied the IFR only to entities related to the City of Chicago and the City of New York. This limited enforcement indicates that the reviews for compliance with antidiscrimination laws are a pretextual basis for some other interest unrelated to actual compliance with Defendants' stated concerns. Defendants have not provided any justification for targeted enforcement of what should otherwise be a policy applicable to all DOT's grants nationwide. This limited and targeted enforcement is likely arbitrary and capricious.

## B. Violation of the APA's Procedural Requirements

Defendants failed to provide notice and an opportunity for the public, including the CTA, to comment, as is required under 5 U.S.C. § 553(b)-(c). The IFR states that notice was not provided because it would have been "impracticable." *See* 90 FR at

11

47,974. But Defendants have identified neither an emergency nor any imminent risk of serious harm that would justify implementing the IFR without notice and comment and then immediately deploying it against the CTA. Absent any sort of reasonable justification for this failure to follow the requirements of the APA, the Court must find that the CTA has a likelihood of success on this claim. The same analysis demonstrates that the CTA is likely to succeed on its claim that Defendants improperly failed to comply with the APA's 30-day delay requirement, 5 U.S.C. § 553(d)(3).

### C.     Violation of Title VI

Before a federal agency may terminate or suspend funding to a recipient who fails to comply with Title VI, the agency must follow certain procedures set forth in Title VI and its implementing regulations. Defendants failed to conduct an investigation as required by 49 C.F.R. § 21.11. Defendants failed to give the CTA notice that satisfies 42 U.S.C. § 2000d-1, or a hearing under 42 U.S.C. § 2000d-1; 49 C.F.R. § 21.13(c). Neither did Defendants initially seek voluntary compliance as required by 42 U.S.C. § 2000d-1; 49 C.F.R. § 21.9(a). And even after the CTA complied with Defendants' review, Defendants have not resumed processing the grant payments.

### D.     Compliance with 2 C.F.R. Part 200

Under Part 200, an agency may "temporarily withhold payments" under a federal grant, 2 C.F.R. § 200.339(a), only if it first (1) identifies "noncompliance" with federal law on the part of the grant recipient and (2) "determines that [such]

noncompliance cannot be remedied by imposing specific conditions," *id.* § 200.339. Here, Defendants did neither. The DOT's letters identified no noncompliance on CTA's part. To the contrary, the DOT indicated that CTA's grants were being "reviewed" to determine whether any noncompliance was occurring. And failing the first requirement under § 200.339, Defendants necessarily failed the second: Defendants did not determine that any purported noncompliance by CTA could not "be remedied by imposing specific conditions on CTA." 2 C.F.R. § 200.339. Defendants further violated 2 C.F.R. § 200.342 by failing to provide CTA with the required "opportunity to object and provide information challenging the [freezes]" before they took effect.

Defendants' actions also violate the payment requirements of 2 C.F.R. § 200.305. Agencies are generally required to make payments "in advance." 2 C.F.R. § 200.305(b)(1). Even when grantees are paid on a reimbursement model, payment requests must be honored "within 30 calendar days . . . unless the Federal agency . . . reasonably believes the request to be improper." 2 C.F.R. § 200.305(b)(3). Here, CTA submitted regular payment requests in early October 2025, yet more than five months later, Defendants have not acted on them, in violation of these requirements.

### E. Irreparable Harm

As discussed above, the irreparable harm that will occur from stopping these major infrastructure projects is clear from the declaration submitted by the CTA's Chief Financial Officer. At oral argument, Defendants stated that they did not dispute the asserted facts in the declaration for purposes of this motion. In this brief,

Defendants argue that the alleged harm is "fundamentally economic" and as such is "definitionally not irreparable." But this argument baldly ignores the harm caused by delays and the work necessary to preserve construction projects during such delays. These delays and the risks to safety and integrity of the projects are sufficiently irreparable to satisfy the CTA's burden on this motion.

### Conclusion

For these reasons, the Court has jurisdiction over the CTA's claims, and the Court grants the CTA's motion for a temporary restraining order [8]. Accordingly, the Court makes the following preliminary findings:

(1) The IFR's retroactive application to the CTA's existing grants is unlawful and unconstitutional;

(2) The IFR is vacated and set aside as retroactively applied to the CTA's existing grants; and

(3) The effective date of the IFR's retroactive application to CTA's existing grants is postponed pending the conclusion of review procedures.

And the Court orders the following:

(1) The Federal Transit Administration the U.S. Department of Transportation, their agents, and anyone acting in concert or participation with them, are temporarily restrained from applying the IFR to the CTA's existing grants;

(2) The Federal Transit Administration the U.S. Department of Transportation, their agents, and anyone acting in concert or participation with them, are temporarily restrained from implementing, instituting, maintaining, or

giving effect to the IFR as applied to CTA's existing grants, including by refusing to disburse funding under the CTA's Red Line Extension and Red and Purple Modernization grants.

This order is stayed and will not take effect until Friday, March 27, 2026, at 10 a.m.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 24, 2026