# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AFTERSCHOOL FOR CHILDREN
AND TEENS NOW (ACT NOW)
COALITION and METROPOLITAN
FAMILY SERVICES

     Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
EDUCATION and LINDA McMAHON,
in her official capacity as Secretary,
U.S. Department of Education,

     Defendants.

Case No. 25-cv-15704

## SUPPLEMENTAL MEMORANDUM

In *Evers v. Astrue*, 536 F.3d 651 (7th Cir. 2008), the Seventh Circuit cited *Megapulse* and its progeny as "persuasive authority" and applied its two-pronged test to "ascertain the source of [plaintiff Dr.] Evers's rights and the forms of relief requested (or appropriate) to vindicate those rights." *Id.* at 658. District courts, including this Court, have since applied *Megapulse* to resolve Tucker Act disputes concerning federal grants. *See, e.g., Chi. Transit Auth. v. U.S. Dep't of Transp.*, 2026 LEXIS 61864 at *7–12 (N.D. Ill. Mar. 24, 2026); *Chi. Women in Trades v. Trump*, 778 F. Supp. 3d 959, 980–82 (N.D. Ill. 2025).

The *Evers* court examined each of Evers's claims to determine whether they were based on a breach of contract and sought contractual remedies. Dr. Evers had a consulting contract with the Social Security Administration (SSA) set to expire in

1

December 2003. 536 F.3d at 653. In August 2003, with five months remaining, SSA terminated Evers' employment under the contract's for-cause provisions. *Id.* at 654. Evers alleged that the termination violated his constitutional due process rights and the APA, and he sought, among other relief, "2.7 million in damages . . . [and] a reversal of the stop-work order and contract termination." *Id.* at 655.

The Seventh Circuit held that most of Evers's claims alleged breach of contract and sought contractual remedies, including money damages and ordering performance of specific terms.[1] Evers's due-process claims would require analyzing his contract's for-cause provisions to determine "whether SSA acted *ultra vires* to its contractual authority when it terminated [him]." *Id.* at 659–61. Likewise, the court found that Evers's APA claim alleging his termination violated federal regulations "reiterates many of the same due-process claims." *Id.* at 661. And upon a "closer reading of the complaint," the court confirmed that Evers primarily sought contractual remedies: "monetary damages . . . to compensate for his lost earnings" and "a *reversal* of the termination of his contract—a remedy . . . aptly described as a request for 'specific performance.'" *Id.* at 660 (emphasis added). In other words, Evers had a government contract entitling him to work, SSA terminated the contract under its termination provisions, and Evers sought orders reinstating his contractual entitlements and compensating him for an alleged breach.

Justice Barrett's controlling concurrence in *NIH* refines this analysis when plaintiffs are federal grantees. Clarifying the Supreme Court's stay in *Department of*

---

[1] Evers's claims asserting "the right to be fairly considered" sought to vindicate regulatory rights with regulatory remedies that placed them outside the Contract Disputes Act's reach. *Id.* at 661.

*Education v. California*, Justice Barrett considered the effects of setting aside two "distinct agency actions": 1) a grant *termination*, which would *automatically reinstate a contractual obligation to pay*, and 2) agency guidance, which would neither reinstate an obligation to pay nor void decisions made pursuant to it. *NIH v. APHA*, 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring). That the guidance relates to grants "does not transform a challenge to that guidance into one 'founded . . . upon a contract' that only the CFC can hear." *Id.* (citing 28 U.S.C. § 1491(a)(1)). [2]

That distinction is important and applies here. The pivotal inquiry is whether Plaintiffs seek to reinstate an active contract and thereby automatically restore a government payment obligation. Where the requested relief would not require payment, the claims are "legally distinct" from the Tucker Act. *Id. Accord. City of Chicago v. Noem*, 2025 U.S. Dist. LEXIS 229407 at *12–13 and n.7. (N.D. Ill. Jan. 23, 2026) ("When the relief sought . . . does not require payment of money, that is a standard APA challenge that district courts have original jurisdiction over."); *City of Chicago v. DOJ*, 2026 U.S. Dist. LEXIS 8094 at *10–11 (N.D. Ill. Jan. 15, 2026) ("Here, Plaintiffs do not seek relief that would obligate Defendants to pay money, nor do they challenge a grant termination. . . . Jurisdiction in this case is thus consistent with *Nat'l Institutes of Health*.")

---

[2] Justice Barrett's analysis did not turn on whether the challenged agency action was agency-wide guidance, but rather whether setting aside that action amounts to an order for payment. 145 S. Ct. at 2661. Regardless, Plaintiffs' complaint alleges that Defendants non-continuations of their grants implemented new guidance pursuant to changes in Administration policy. Dkt. 1, Compl. at ¶¶ 5–7 (alleging change from lawful standards), 27–29 (describing past non-continuations as "exceedingly rare" and "only tied to . . . project performance"), and 67 n.6 (noting apparent implementation of Executive Order 14332). *See also* Dkt. 6, Mem. ISO Pls.' Mot. for TRO at 14–15 (seeking relief "on an emergency, program-wide basis").

Jurisdiction in this Court, then, is proper under *Evers* and *NIH*. In *Evers*—as with grant termination cases like *California* and *NIH*—the government terminated a contractual obligation to pay money, such that reversal of that action would automatically reinstate a payment obligation. Non-continuation decisions are categorically different agency actions. *See* Pls.' Resp. to Mot. to Dismiss at 5–6, 8–10. Here, like the agency action challenge found to be properly within the district court's jurisdiction in *NIH*, the actions Plaintiffs challenge occurred before any contractual payment obligation attached. Therefore, reversal of non-continuation decisions does not automatically obligate the government to pay, and there is nothing to specifically perform. *See id.* at 11–15; *see also City of Chicago v. DHS*, 2025 U.S. Dist. LEXIS 215014 at *34–35 (N.D. Ill. Oct. 31, 2025) (finding jurisdiction over challenges to actions that "freeze funding" because, "[t]hose challenges, if successful, would not require the Court to reverse or vacate past grant terminations, or otherwise require the government to pay money past due").

Because Plaintiffs' claims are founded upon the First Amendment, Fifth Amendment, and the APA—none of which is money-mandating—the Court of Federal Claims has no jurisdiction over them. *See, e.g., Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). That an order granting relief from improper agency action may eventually result in the disbursement of funds does not change this analysis. *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988).

## Conclusion

As *Evers* and *NIH* clarify, only this Court has jurisdiction over Plaintiffs' claims. *Evers* confirms that the *Megapulse* test—analyzing the source of the rights and the relief sought—is good law in the Seventh Circuit. Under that test, as clarified by *NIH*, Plaintiffs' claims are not "founded upon" a contract under the Tucker Act because they challenge agency actions that 1) do not breach a contractual entitlement and 2) would neither order the government to pay money nor perform under specific terms if set aside. Because Plaintiffs' claims are based on non-money-mandating sources, the Court of Federal Claims has no jurisdiction, and therefore, "cannot have exclusive jurisdiction." *Freedom Network USA v. Trump*, 2026 U.S. Dist. LEXIS 60307 at \*27 (N.D. Ill. Mar. 23, 2026) (citing *Tootle v. Sec'y of Navy*, 446 F.3d 167, 177 (D.C. Cir. 2006)). Only this Court can consider Plaintiffs' claims.

Dated: April 16, 2026

Respectfully Submitted,

 /s/ *Jocelyn Skinner*
Jocelyn (Josie) E. Skinner*
Emily K. Merolli*
SLIGO LAW GROUP, PLLC
1717 K St. NW, Ste. 900
Washington, DC 20006
Tel: (202) 888-2084
josie@sligolawgroup.com
emily@sligolawgroup.com

 /s/ *Michael Ortega*
Aneel L. Chablani (No. 6242658)
Beatriz A. Diaz-Pollack (No. 6274809)
Michael R. Ortega (No. 6339469)
Chicago Lawyers' Committee for Civil Rights
25 E. Washington St., Ste. 1300
Chicago, IL 60602
Telephone: (312) 630-9744
Facsimile: (312) 630-1127
achablani@clccrul.org
bdiaz-pollack@clccrul.org
mortega@clccrul.org

Attorneys for Metropolitan Family Services and Afterschool for Children and Teens Now (ACT Now) Coalition

* *Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that on April 16, 2026, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Northern District of Illinois, using the CM/ECF filing system, which will forward notice to all counsel of record.

/s/ Michael Ortega

Michael R. Ortega