UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AFTERSCHOOL FOR CHILDREN AND TEENS NOW (ACT NOW) COALITION and METROPOLITAN FAMILY SERVICES, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 25 C 15704 |
| v. | ) ) | Judge Pacold |
| U.S. DEPARTMENT OF EDUCATION and LINDA McMAHON, in her official capacity as Secretary, U.S. Department of Education, | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**Table of Contents**

Table of Authorities ........................................................................................................ ii

Introduction.................................................................................................................... 1

Factual Background ....................................................................................................... 2

Argument ....................................................................................................................... 4

    I.       The Court Lacks Jurisdiction ........................................................................ 5

    II.     Likelihood of Success on the Merits............................................................ 5

         A.      ACT Now's APA Claims Lack Merit.................................................. 5

         B.      Plaintiffs are Unlikely to Prevail on their Constitutional Claims ............... 9

              a.  Spending Clause and Separation of Powers.......................................... 9

              b.  Due Process Void for Vagueness.......................................................... 12

              c.  Fifth Amendment Due Process ............................................................. 14

              d.  First Amendment Claims ...................................................................... 16

    III.    ACT Now Has Failed to Demonstrate Irreparable Harm ....................................... 17

Conclusion ................................................................................................................... 19

**Table of Authorities**

Cases

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013).......................... 10, 17

*Baldwin v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 170 F.4th 273 (4th Cir. 2026)................................................................................................................. 7, 8

*Bd. of Educ. for Silver Consol. Schs. v. McMahon*, 791 F. Supp. 3d 1272 (D.N.M. 2025) ..................................................................................................................... 10, 13, 18

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)............................................. 15

*Bevis v. City of Naperville, Illinois*, 85 F.4th 1175 (7th Cir. 2023)................................. 4

*Board of Education of the City School District of the City of New York v. United States Dep't of Educ.*, 2025 WL 3969684 ............................................................................... 5

*Dalton v,* Specter, 511 U.S. 462 (1994).......................................................................... 1, 9

*Dep't of Educ. v. California*, 604 U.S. 650 (2025)........................................................... 2

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021)................................................. 8

*Freedom Network USA v. Trump*, No. 25 C, 12419, 2026 WL 800392 (N.D. Ill. Mar. 23, 2026) .......................................................................................................................... 14

*G.L. Christian & Assoc. v. United States*, 160 Ct. Cl. 1 (1963) ..................................... 16

*Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374 (S.D.N.Y. 2014) ............................................. 15

*Glob. Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025)....................................... 9, 14

*Goldberg v. Kelly,* 397 U.S. 254 (1970) ........................................................................... 15

*Kilborn v. Amiridis*, 131 F.4th 550 (7th Cir. 2025) ........................................................ 13

*Leathers v. Medlock*, 499 U.S. 439 (1991) ...................................................................... 17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ....... 8

*N.Y. v. United States*, 505 U.S. 144 (1992)...................................................................... 10

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) ........................................ 13, 16

*Nat'l Juv. L. Ctr., Inc. v. Regnery*, 738 F.2d 455 (D.C. Cir. 1984) ............................... 7

*New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12 (D.D.C. 2014) ................................................................................................ 16

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................... 4, 18

*Northrop Grumman Corp. v. United States*, 46 Fed. Cl. 622 (2000)................. 16

*Perry v. Sindermann,* 408 U.S. 593 (1972)......................................................... 15

*Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1 (1st Cir. 2005)....................... 15

*Rust v. Sullivan*, 500 U.S. 173 (1991).................................................................. 17

*S.D. v. Dole*, 483 U.S. 203 (1987) ...................................................................... 10

*Safari Club Int'l v. Zinke*, 878 F.3d 316 (D.C. Cir. 2017)..................................... 5

*State v. U.S. Dep't of Educ.*, 132 F.4th 92 (1st Cir. 2025)................................... 18

*Town of Castle Rock v. Gonzalez*, 545 U.S. 748 (2005)...................................... 15

*Trades v. Trump*, 778 F. Supp. 3d 959 (N.D. Ill. 2025)................................. 14, 17

*Trump v. Boyle*, 145 S. Ct. 2653 (2025) ............................................................. 18

*United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194 (2003) ......................... 16, 17

*United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224 (1973) ............................... 5

*Washington v. United States Dep't of Educ.,* 813 F. Supp. 3d 1222 (W.D. Wash. 2025) ........ 5, 12

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)............................... 4, 18

*Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353 (2009)....................................... 17

Statutes

20 U.S.C. § 954(d)(1) ........................................................................................... 13

20 U.S.C. § 1232(a) ............................................................................................... 6

20 U.S.C. § 1232(d) ............................................................................................... 6

Regulations

2 C.F.R. § 200.340(a)(4)....................................................................................... 16

2 CFR part 200 ........................................................................................................ 7

34 C.F.R. part 75 ................................................................................................... 3

34 C.F.R. § 75.230 ............................................................................................. 11

34 C.F.R. § 75.253(a)(1) ...................................................................................... 8

34 C.F.R. § 75.253(a)(5) ................................................................................. 6, 7

34 C.F.R. § 75.253(g) .................................................................................. 14, 15

34 CFR 75.253 ............................................................................................ *passim*

34 CFR §§ 75.112 ................................................................................................ 7

48 C.F.R. § 49.502 ............................................................................................ 16

Other Authorities

45 Fed. Reg. 22 ................................................................................................... 6

87 Fed. Reg. ........................................................................................................ 3

88 FR 37222 (June 7, 2023) ................................................................................ 2

89 Fed. Reg. ........................................................................................................ 6

Welfare., 45 Fed. Reg. 22 ................................................................................... 7

**Introduction**

Under the Department of Education's grant agreements with ACT Now, the Secretary of Education must determine that continuation of an award is in the best interest of the federal government before obligating additional funds each year. If the Secretary determines it is not, the Department is authorized to discontinue funding. Exercising that authority, the Secretary concluded that plaintiffs' grants no longer served the government's best interests and issued notices of non-continuation in December 2025. Plaintiffs now seek the extraordinary remedy of a preliminary injunction to compel the Department to revisit those discretionary determinations in a way that would restore their funding. They are not entitled to such relief.

First, plaintiffs attempt to manufacture constitutional claims where none exist, recasting the Department's routine exercise of its continuation award authority as violations of the Spending Clause, separation of powers, due process, and the First Amendment. These efforts are legally unsupported and foreclosed by the Supreme Court's controlling direction in *Dalton v. Specter*. 511 U.S. 462, 471 (1994).

In any event, plaintiffs cannot prevail on the merits. ACT Now has no cognizable property interest because it has no entitlement—constitutional, statutory, contractual, or otherwise—to continued federal funding. Plaintiffs' First Amendment claims fail because the government is not required to subsidize their preferred programming or viewpoints, and a decision not to fund particular activities does not restrict, compel, or penalize private speech. The Department acted squarely within the regulatory framework that governs continuation awards, including the requirement that a project remain in the "best interest of the federal government." Plaintiffs may disagree with the Department's policy assessment, but policy disagreement does not render the Department's non-continuation decision unconstitutional or contrary to the APA.

Plaintiffs further cannot show irreparable harm. They seek only future funding that was never guaranteed and that federal law expressly conditions on annual continuation determinations. By contrast, the injunction they request would compel the Department to disburse federal funds it may never lawfully recover—precisely the type of irreparable harm courts warn against when taxpayer dollars are at stake. *See Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) Because plaintiffs cannot satisfy any of the requirements for preliminary relief, the court should deny their motion.

**Factual Background**

In June 2023, the Department's issued a Notice Inviting Applications ("NIA") to solicit new applications for the Full-Service Community Schools ("FSCS") program. Dkt. 1 at ¶ 31; *Applications for New Awards*, 88 FR 37222 (June 7, 2023). FSCS is a discretionary grant program that aims to support the development and expansion of community schools that provide comprehensive academic, social, and health services to students and families through coordinated local partnerships. Dkt. 1 at ¶ 22. The Department administers the FSCS program and the Secretary of Education awards grants on a competitive basis to eligible entities. Dkt. 1 at ¶¶ 20, 23.

The NIAs were explicit that, for multi-year awards, funding for future years was not guaranteed and would depend on the Secretary of Education's decision to make a "continuation award." *Applications for New Awards*, 88 FR at 37222 (June 7, 2023). Continuation awards are issued only if the grantee continues to meet multiple, specific regulatory requirements concerning grant performance, financial reporting, continued eligibility, and financial and administrative management requirements. *Id.*; Dkt. 1 at ¶ 27. To receive continued funding, the Secretary also

must determine that continuing the project is "in the best interest of the Federal Government." Dkt. 1 at ¶ 27.[1]

The Department's regulations at 34 C.F.R. part 75 establish general administrative regulations applicable to discretionary grant programs, including regulations that govern continuation awards and establish mandatory criteria for award funding to continue. *See* 87 Fed. Reg. 60, 144, 60, 151 (citing 34 C.F.R. § 75.253). The Department's regulations establish five separate and independent elements necessary for a continuation award. The grantee must:

1. Either "demonstrate it has made substantial progress" toward the project goals or "[o]btain the Secretary's approval for changes to the project;"

2. "Submit all reports as required by [34 C.F.R.] § 75.118;"

3. "Continue to meet all applicable eligibility requirements of the grant program;

4. "Maintain financial and administrative management systems that meet the requirements in 2 CFR [§§] 200.302[,] 200.303;" and

5. "Receive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government."

34 C.F.R. § 75.253.

In 2023, the Department of Education awarded ACT Now two discretionary FSCS grants through its fiscal sponsor, Metropolitan Family Services ("MFS"). Dkt. 1 at ¶ 30. Both grants were awarded on a multi-year project period beginning in January 2024. Dkt. 1 at ¶ 27. The notice was explicit that for multi-year awards, funding for future years was not guaranteed and would depend upon the Secretary of Education's decision to make a "continuation award." 88 FR

---

[1] The Grant Award Notifications also incorporated this language and explicitly stated that continuation awards will require the Secretary to determine that continued funding would be in the best interests of the government. Dkt. 28-2 at 4 ("IN ACCORDANCE WITH 34 CFR 75.253, THE SECRETARY CONSIDERS, AMONG OTHER THINGS, CONTINUED FUNDING IF . . . (2) THE DEPARTMENT DETERMINES THAT CONTINUING THE PROJECT WOULD BE IN THE BEST INTEREST OF THE GOVERNMENT); Dkt. 28-3 at 4 (same).

at 37237. The Department funded the grants for an initial budget period in 2024 and issued a continuation award for 2025. Dkt. 1 at ¶¶ 3–5. However, the Department issued notices of non-continuation in December 2025, declining to continue both FSCS grant awards and denying future funding after concluding that continuing the grants would be inconsistent with, and would fail to effectuate, the best interests of the United States and citing specific information from each grant. Dkt. 1 at ¶ 36. Plaintiffs sought reconsideration of the non-continuation decisions, and the Department denied each of those requests on December 29, 2025. Dkt. 1 at ¶¶ 37–8. In response, plaintiffs filed this action, seeking declaratory and injunctive relief to vacate the Department of Education's notices of non-continuation, to compel the Department to reinstate the grant funds, and to enjoin the Department "from denying continuation funding" further. Dkt. 1 at 25–6.

**Argument**

ACT Now is not entitled to any emergency relief. A preliminary injunction is "'an extraordinary remedy never awarded as of right." *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1188 (7th Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The movant "'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* For the first factor, the movant must make a "'strong' showing that reveals how it proposes to prove its case." *Id.* For the second factor, "a mere possibility of irreparable harm will not suffice." *Id.* Finally, when "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## I. The Court Lacks Jurisdiction.

The court should dismiss plaintiffs' claims for lack of jurisdiction. In the complaint, ACT Now asserts disguised contract claims and seeks an order compelling the defendants to perform under the terms of a written contract and to pay grant funds.[2] The Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over such claims for the reasons explained in the Department's motion to dismiss. Dkt. 28-1; 31. The Department incorporates those arguments here by reference.

## II. Likelihood of Success on the Merits

## A. ACT Now's APA Claims Lack Merit.

Plaintiffs' assertion that the Department violated the APA by making the non-continuation decision without notice and comment lacks merit. Dkt. 48 at 12. Plaintiffs challenge, and seek to vacate, the non-continuation decisions themselves. Dkt. 1 at 26(D). However, the non-continuation decisions look nothing like rules that might be subject to the notice-and-comment rulemaking procedures set forth in Section 553 of the APA. *See* Dkt. 3-7.

"Legislative rules"—the subset of rules for which notice-and-comment may be required—are normally "generally applicable" and have only "future effect." *Safari Club Int'l v. Zinke*, 878 F.3d 316, 332-33 (D.C. Cir. 2017); *see United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 244 (1973) (classifying agency action as a rule because it was "generalized [in] nature" and was meant "for prospective application only, rather than [to] adjudicate a particular set of disputed facts"). Because the non-continuation decisions address only "a particular set of disputed facts" and do not

---

[2] *See Washington v. United States Dep't of Educ.,* 813 F. Supp. 3d 1222, 1243 (W.D. Wash. 2025) (Motions to Enforce filed January 9, 2026 and March 13, 2026); *The Board of Education of the City School District of the City of New York v. United States Dep't of Educ.,* 2025 WL 3969684 (S.D.N.Y.) (Motion to Enforce filed May 14, 2026).

establish generally applicable standards, they are not *rules* subject to notice-and-comment requirements.

The same point is underscored by provisions of the General Education Provisions Act (GEPA). Title VI § 553(a)(2) generally exempts "matter[s] relating to . . . grants" from notice-and-comment requirements—an exemption that plainly covers the non-continuation decisions here. GEPA eliminates that exemption only for "regulations." 20 U.S.C. § 1232(d). And Congress defined a "regulation" as "any *generally applicable* rule, regulation, guideline, interpretation, or other requirement that (1) is prescribed by the Secretary or the Department; and (2) has *legally binding effect* in connection with, or affecting, the provision of financial assistance under any applicable program." 20 U.S.C. § 1232(a) (emphasis added). Under this definition, there can be no dispute that the non-continuation decisions are not "regulations" under GEPA any more than they are "rules" under the APA, and notice-and-comment requirements do not apply.

In short, the Department did not promulgate any rule or regulation in discontinuing the grants at issue here, and GEPA's notice-and-comment requirements are not applicable. Instead, the Department exercised existing authority conferred by 34 C.F.R. § 75.253(a)(5), (a regulation long utilized by the Department that itself was originally subject to notice and comment, *see* 45 Fed. Reg. 22,494, 22,510 (Apr. 3, 1980), and then updated through notice and comment in 2024, *see* 89 Fed. Reg. 70,328), to determine that the projects no longer served the government's best interests. This regulation provides:

> A grantee, in order to receive a continuation award from the Secretary for a budget period after the first budget period of an approved multiyear project, must— . . . [among other things] [r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government.

34 C.F.R. § 75.253(a)(5).[3]

In determining whether to make a continuation award, "the Secretary may consider any relevant information regarding grantee performance. This includes considering reports required by § 75.118, performance measures established under § 75.110, financial information required by 2 CFR part 200, and *any other relevant information.*" *Id.* § 75.253(b) (emphasis added). "The Secretary may decide not to make a continuation award if . . . [a] grantee fails to meet any of the requirements in paragraph (a) of this section[.]" *Id.* § 75.253(f)(1). In any case, the approved grant application is the performance plan from the grant, and the Department holds the grantee to perform the activities and expend funds as required by the application. *See, e.g.,* 34 CFR §§ 75.112, 75.117.

ACT Now attempts to read into this regulation a statutory prohibition under GEPA against the Department discontinuing grants based on a shift of policy preferences between administrations. Dkt. 48 at 13. The best-interest provision has no such constraint. It permits the Department to consider the full range of government interests at the time of the continuation decision; it is not limited to the priorities identified at the outset of the grant competition and does not lock into place the policy preferences of the administration in power at the time of the initial grant award. *Baldwin v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 170 F.4th 273, 283 (4th Cir. 2026) ("We decline to read a substantive requirement into a regulation that does not appear anywhere within the plain text."); *Nat'l Juv. L. Ctr., Inc. v. Regnery*, 738 F.2d 455, 462 (D.C. Cir. 1984) ("[C]hanges in agency policy should be expected over a period of time. Grant

---

[3] Consideration that "continuation of the project is in the best interest of the Federal Government" is a bedrock principle of continuation funding, and has existed in regulation since the Education Division was a unit of the Department of Health, Education, and Welfare. 45 Fed. Reg. 22,497 (Apr. 3, 1980).

recipients should therefore be on the alert for such changes and grantee reliance on continued indefinite funding in the face of grants that were themselves explicitly stated to be for set periods of time is in general unreasonable.")  Plaintiffs' reading likewise renders the best-interest requirement largely superfluous, because other continuation criteria—such as whether the grantee has made "substantial progress in achieving . . . [t]he goals and objectives of the project" (34 C.F.R. § 75.253(a)(1))—already address whether a project furthers the priorities set at the start of a grant competition.  *See Baldwin*, 170 F.4th at 284 ("we abide by the principle of regulatory interpretation that 'constructions which render regulatory provisions superfluous are to be avoided'").

Finally, plaintiffs cannot establish that the Department's non-continuation decisions were arbitrary and capricious.  Judicial review under the APA's arbitrary-and-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  That review is "narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  All that is required is for the agency to "act[] within a zone of reasonableness." *Prometheus*, 592 U.S. at 423.

Here, the Department identified the grounds for its individualized non-continuation decision.  In conducting its review, the Department identified four priorities that it used as the criteria for determining the "best interest of the federal government": (1) advancing civil rights, (2) prioritizing merit, fairness, and excellence in education, (3) supporting the well-being of students the program intends to help, and (4) ensuring the appropriate use of federal funds. *See* Dkt 3-7.  The non-continuation decisions also identified the specific programs and policies that conflict with these priorities, including integrated gender and sexuality training for educators and the 1619 Project, among others. *Id*.  The Department thus exercised its discretion in determining

8

the "best interest of the federal government," and that continued funding of grantees' projects would not meet those best interests.

**B. Plaintiffs are Unlikely to Prevail on their Constitutional Claims.**

**a. Spending Clause and Separation of Powers**

Plaintiffs are unlikely to prevail on their Spending Clause and Separation of Powers claims. As an initial matter, plaintiffs' challenges are statutory causes of action, dressed up as constitutional claims and, therefore, are foreclosed under *Dalton v. Specter*. 511 U.S. 462, 471 (1994). In addition, plaintiffs' Spending Clause claim fails because the Spending Clause is only implicated where Congress has imposed a spending or funding condition.

In *Dalton*, the Supreme Court reviewed a circuit court's reasoning that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine," and therefore "judicial review must be available to determine whether the President has statutory authority for whatever action he takes." *Dalton v. Specter*, 511 U.S. 462, 471 (1994) (cleaned up). The Court rejected that effort to recast statutory claims as constitutional ones and emphasized that it had "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* at 472 (citations omitted). The Supreme Court's directive in *Dalton* is simple: plaintiffs may not dress up statutory causes of action as constitutional ones. *Id.* at 473 ("[C]laims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review.") Otherwise, plaintiffs could avoid statutory limits on review by reframing any alleged statutory violation by the President as a constitutional one. *Glob. Health Council v. Trump*, 153 F.4th 1, 14 (D.C. Cir. 2025). Here, *Dalton* forecloses ACT Now's ability to raise these statutory arguments

9

with constitutional dressing. Plaintiffs have simply repackaged an APA claim as violations of the Spending Clause and Separation of Powers.

ACT Now's Spending Clause claim fails as a matter of law on the merits as well. Under the Spending Clause, Congress has "broad discretion to . . . fund[] particular state or private programs or activities." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013). "Incident to this power, Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *S.D. v. Dole*, 483 U.S. 203, 206 (1987). But the Spending Clause is only implicated "when *Congress* imposes a spending or funding condition." *Bd. of Educ. for Silver Consol. Schs. v. McMahon*, 791 F. Supp. 3d 1272, 1288 (D.N.M. 2025) (emphasis added).[4] Without alleging congressional action, plaintiffs "cannot state a claim under the Spending Clause." *Id*. In this case, ACT Now has not alleged that Congress imposed conditions in violation of the Spending Clause. Rather, plaintiffs assert that the defendants—members of the Executive Branch—have unlawfully denied a continuation award based on a grantee's DEI initiatives. Dkt. 48 at 17. Plaintiffs cannot prevail on the merits of their Spending Clause claim. *Bd. of Educ. for Silver Consol. Schs.*, 791 F. Supp. 3d at 1288.

ACT Now also insists that the defendants violated the Separation of Powers and Spending Clause by imposing conditions on federal funds (the grant awards) and "surprising" ACT Now

---

[4] *See, e.g.*, *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 208, 213–21, (2013) (holding that the spending conditions Congress placed on funding in the United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of 2003 violated the Spending Clause); *S. Dakota v. Dole*, 483 U.S. 203, 206 (1987) (holding that Congress did not violate the Spending Clause by requiring states to raise the minimum drinking age to receive federal funds); *N.Y. v. United States*, 505 U.S. 144, 167, 174–75 (1992) (holding that "the conditions attached to [ ] funds by Congress" violated the Spending Clause).

with "retroactive conditions." Dkt. 48 at 18. The Department imposed no such conditions on the grants, retroactive or otherwise. The Department issued an individualized non-continuation decision to terminate future funding based on existing regulations and the terms incorporated in ACT Now's grant awards (34 C.F.R. § 75.230). Under the terms of the grants, the Secretary would make annual continuation decisions for each grant based on 34 C.F.R. § 75.253. The express terms of the grants made clear that continued funding in future years was contingent on a best-interest finding. Grantees voluntarily accepted those terms. Even if the Department imposed a condition on federal funding by discontinuing grants awarded to ACT Now, however, the challenge would still fail because the condition is unambiguous and merely reinforces preexisting legal obligations. As explained above, the requirement that federal funding recipients follow the law is not new. *See supra* II(A).

Nor can ACT Now claim that it had a reliance interest in future grant funding. In this litigation, ACT Now has repeatedly argued that grant funding for future years was not guaranteed or promised and that each award year was effectively a separate and divisible grant agreement subject to an independent grant continuation decision. Dkt. 30 at 11 ("Each [Grant Award Notification] clearly states that 'this award supports only the budget period' listed, and that amounts slated for future years '*do not bind the Secretary* to funding the award for these periods or for the specific amounts shown.'") (emphasis in original); *Mot. to Dismiss Hr'g Tr.* at 14:17-15:1, *ACT Now v. Dept. of Ed.* (N.D. Ill. Apr. 13, 2025) (Pacold, J.) ([Plaintiffs' Counsel:] "It's a multi-year grant, but the grant funding is not awarded all at once, and it's not promised all at once . . . . [T]he grant agreements themselves explicitly state that future funding is not guaranteed."); *Id.* at 14:8-11 ([Plaintiffs' Counsel:] "Funds were never promised, never withheld, and the Court is not being asked to an order – enforce an order for contractual obligation to pay money."). ACT

11

Now disclaimed any reliance on future funding based on previous grant awards. Plaintiffs cannot now contend that the Department's non-continuation decision is unlawful because it amounts to a retroactive condition on previously awarded grant funds.

### b. Due Process Void for Vagueness

Next, ACT Now argues that the "best interest" standard codified in 34 C.F.R. § 75.253 is void for vagueness. Plaintiffs' argument is not entirely clear. The Department understands ACT Now to challenge either the Department's application of 34 C.F.R. § 75.253 to its December 2025 non-continuation decision or to assert that the best-interest standard is unconstitutionally vague more broadly. Neither argument survives scrutiny.

To the extent that ACT Now asserts that the Department's application of the best interest standard is unconstitutional, plaintiffs impermissibly seek to convert statutory claims into independent constitutional claims. Plaintiffs insist that the best interest standard in 34 C.F.R. § 75.253 must be construed based on traditional canons of construction. Dkt. 48 at 19. ACT Now maintains that the best interest standard can only be interpreted narrowly to permit discontinuations based solely on grantee performance. Dkt. 48 at 19. But this argument is identical to ACT Now's APA claim that the Department acted contrary to law in its interpretation of 34 C.F.R. § 75.253. *Cf.* Dkt. 48 at 14 ("Read in context, the 'best interest' standard for continuation awards clearly requires assessing grantee performance") (citing *Washington v. United States Dep't of Educ.,* 813 F. Supp. 3d 1222, 1244 (W.D. Wash. 2025)). *Dalton* forecloses this claim.[5]

---

[5] Plaintiffs cite to *Washington v. Dep't of Education* to establish that the district court has applied these interpretive canons to 34 C.F.R. § 75.253. Dkt. 48 at 19 (citing *Washington v. United States Dep't of Educ.,* 813 F. Supp. 3d 1222, 1243 (W.D. Wash. 2025)). *Washington* does not support plaintiffs' argument. There, the court interpreted the best interest standard based on canons of construction in analyzing plaintiff's APA claim. The court did not conclude that 34 C.F.R. § 75.253 is unconstitutionally void for vagueness. Accordingly, *Washington* further demonstrates that plaintiffs' have reframed their APA cause of action as a constitutional claim.

Alternatively, to the extent that ACT Now argues that the "best interest" standard itself is void for vagueness, the Supreme Court's decision in *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 589 (1998), dispenses with this argument. In *Finley*, the Supreme Court rejected the application of any demanding vagueness standard to government funding decisions. There, plaintiffs brought vagueness challenges under the First and Fifth Amendments to a funding provision that required the National Endowment for the Arts to "take[] into consideration general standards of decency and respect for the diverse beliefs and values of the American public." *Id.* at 572 (quoting 20 U.S.C. § 954(d)(1)). The Supreme Court acknowledged that "[t]he terms of the provision are undeniably opaque, and if they appeared in a criminal statute or regulatory scheme, they could raise substantial vagueness concerns." *Id.* at 588. But, the Court reasoned, "when the Government is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." *Id*. at 589; *see also id.* (cautioning that "[t]o accept [plaintiffs'] vagueness argument would be to call into question the constitutionality of . . . valuable Government programs and countless others like them" that "award[] scholarships and grants on the basis of subjective criteria such as 'excellence'").

Here, discontinuing grants based on the Secretary's determination of the federal government's best interests is no vaguer than "awarding scholarship and grants on the basis of subject criteria such as 'excellence,' which the Supreme Court allowed in *Finley*." *Bd. of Educ. for Silver Consol. Schs. v. McMahon*, 791 F. Supp. 3d 1272, 1287 (D.N.M. 2025). Moreover, under these circumstances, when the only impact is federal funding, "the consequences of imprecision are not constitutionally severe." *Finley*, 524 U.S. at 589; *see Kilborn v. Amiridis*, 131 F.4th 550, 565 (7th Cir. 2025) ("The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment."). The provision at issue in this case, 34 C.F.R. §

75.253, does not threaten ACT Now with criminal or regulatory penalties, where vagueness challenges require heightened scrutiny. Indeed, this court has repeatedly concluded that plaintiffs are unlikely to succeed on a void-for-vagueness claim under these circumstances for claims involving government funding and grant-funding determinations.[6] *See, e.g., Chicago Women in Trades v. Trump*, 778 F. Supp. 3d 959, 989 (N.D. Ill. 2025) ("[T]he Court must follow binding authority stating that such vagueness is less 'constitutionally severe' in the context of government funding."); *Freedom Network USA v. Trump*, No. 25 C 12419, 2026 WL 800392, at *13 (N.D. Ill. Mar. 23, 2026) (same).

### c. Fifth Amendment Due Process

ACT Now's remaining due process claims fare no better. Like plaintiffs' other constitutional claims, ACT Now simply repackages their APA causes of action as constitutional claims. In particular, ACT Now complains that the Department's notices of non-continuation violated plaintiffs' due process rights because: (1) the notices failed to explain the "grounds on which" the decisions were based as required by 34 C.F.R. § 75.253(g);[7] (2) the denial letters "did not even attempt to engage with plaintiffs' basis for disagreeing with the Secretary's decision . . . [or their] relevant supporting documentation;"[8] and (3) the compressed timeline for

---

[6] The Northern District of Illinois has acknowledged that these void for vagueness principles extend to claims brought under both the First and Fifth Amendments. *Freedom Network USA v. Trump*, No. 25 C 12419, 2026 WL 800392, at *13 (N.D. Ill. Mar. 23, 2026) ("The Supreme Court's discussion in *Finley*, analyzed in the previous section [concerning the First Amendment], applies with equal force to Freedom Network's Fifth Amendment claim.")

[7] *Cf* Dkt 48 at 16 (arguing that the defendants violated the APA by "failing to explain how or whether the Plaintiff's grant programs conflict with current agency priorities."); *Id*. at 17 ("Because the Department failed to identify any facts that could support its stated basis for discontinuation, its actions were arbitrary and capricious.")

[8] *Cf* Dkt 48 at 16 ("Compounding this harm, the Denial Letters did not address Plaintiffs' information in their requests for reconsideration that their programs were entirely consistent with

14

reconsideration made it impossible for the Secretary to consider the request for reconsideration in any meaningful sense.[9] Dkt. 48 at 20. Each of these arguments is premised on the Department's alleged violations of the APA and 34 C.F.R. 75.253. And plaintiffs fail to identify case law in any jurisdiction that supports their position that these claims survive as independent Due Process claims under these circumstances. This is for good reason.

Even if ACT Now asserted due process claims independent of the APA, plaintiffs do not have a cognizable property interest in a continuation award for grant funding. "The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit.'" *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (citation omitted). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id*.

Applying these principles, the Supreme Court has identified a narrow set of government benefits—so-called "new property"—that are protected under the Due Process Clause. *See Perry v. Sindermann,* 408 U.S. 593 (1972) (tenured teaching position); *Goldberg v. Kelly,* 397 U.S. 254 (1970) (welfare benefits); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972) (collected cases). But the protections afforded to this narrow set have not been extended to "'ordinary' or 'routine' government contracts." *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 385 (S.D.N.Y. 2014); *see also Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 10 (1st Cir. 2005) ("We have held with a regularity bordering on the echolalic that a simple breach of

---

administration priorities. The Department merely asserted without explanation that 'the information in your request for reconsideration was not sufficient to refute these findings . . . .'").

[9] *Cf Id.*

contract does not amount to an unconstitutional deprivation of property."); *New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014) ("The Supreme Court has never held that government contracts for goods and services create property interests protected by due process." (citation omitted)).

Here, ACT Now has not shown that it has any constitutionally protected entitlement-like contracts or grants that will be subject to termination. Government contracts generally allow for "[t]ermination at the convenience of the Government," 48 C.F.R. § 49.502, as do many government grants, *see* 2 C.F.R. § 200.340(a)(4) (authority to terminate award "to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities"). In fact, courts have upheld the government's right to terminate a contract for convenience even absent a termination clause. *See G.L. Christian & Assoc. v. United States*, 160 Ct. Cl. 1, 17 (1963) (reading a termination for convenience clause into the contract by operation of law); *see also Northrop Grumman Corp. v. United States*, 46 Fed. Cl. 622, 626 (2000) ("The Government's right to terminate a contract for convenience is broad."). That is the antithesis of a constitutionally protected entitlement interest. This ends the inquiry for ACT Now's claims.

### d. First Amendment Claims

Plaintiffs' First Amendment claims equally lack merit. It is well established that government spending is not subject to traditional First Amendment scrutiny. When the government acts as patron to subsidize speech, First Amendment concerns are far less pronounced than when it acts as sovereign to regulate it. *Finley*, 524 U.S. at 588 (finding that the government "has wide latitude to set spending priorities" and to choose "to fund one activity to the exclusion of the other."); *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 211 (2003) ("Within broad limits, 'when the Government appropriates public funds to establish a program it is entitled to

16

define the limits of that program."); *see Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009) (explaining that government "is not required to assist others in funding the expression of particular ideas").

Here, the government reviews each program individually to determine whether it wishes to continue projects or programs that conflict with the agency's goal of advancing merit in Federal programs—a choice that it may make when funding. *Id.*; *Leathers v. Medlock*, 499 U.S. 439, 450 (1991) (the government "is not required to subsidize First Amendment rights"); *United States v. Am. Library Ass'n*, 539 U.S. 194, 212 (2003) (plurality) (a "decision not to subsidize the exercise of a fundamental right does not infringe the right") (quoting *Rust v. Sullivan*, 500 U.S. 173, 193 (1991)). The government does not violate the First Amendment by not affirmatively funding programs that do not align with those policies. *Chicago Women in Trades v. Trump*, 778 F. Supp. 3d 959, 986 (N.D. Ill. 2025).

Likewise, the Department's discontinuation of grant funding does not violate ACT Now's First Amendment rights because it does not prohibit or compel private speech. Plaintiff's grants were non-continued based on individual determinations of specific grant activities that the Department determined not to be in the best interests of the federal government, not plaintiff's speech. Moreover, grantees who find their grants threatened by termination for failure to effectuate the best interests of the federal government remain able to pursue activities on their "own time and dime." *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 218 (2013); *Chicago Women in Trades v. Trump,* 778 F. Supp. 3d 959, 987 (N.D. Ill. 2025) ("[G]rantees are free to decline federal funding that they believe unduly hinders their exercise of First Amendment rights.").

**III.    ACT Now Has Failed to Demonstrate Irreparable Harm.**

ACT Now is not entitled to injunctive relief for another reason: it cannot establish that it will suffer irreparable harm if the court denies its motion for injunctive relief.  Plaintiffs seeking the extraordinary remedy of a preliminary injunction must "demonstrate that irreparable injury is likely in the absence of an injunction."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).  Plaintiffs must also demonstrate that "the balance of equities tips in [their] favor" and "an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  These "factors merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, later-incurred money damages—*i.e.*, disbursement of the non-renewed future year grant money—would solve plaintiffs' purported injuries.[10]  Conversely, a preliminary injunction risks irreparable harm to the government and to the public interest by requiring the payment of money that the government may never recover.  *State v. U.S. Dep't of Educ.*, 132 F.4th 92, 100 (1st Cir. 2025) (acknowledging "the Department [of Education] may incur some irreparable harm if it cannot recoup this money"); *Bd. of Educ. for Silver Consol. Schs.*, 791 F. Supp. 3d at 1291 ("Harm to Defendants flow from an inability to put the genie back in the bottle once the funds from the public fisc are spent.").  This decision must "inform how a court should exercise its equitable discretion in like cases."  *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

---

[10] While the Department transmitted the non-continuation notices in December 2025, the Department has provided plaintiffs with continuing access to carryover funds through the end of June to allow for a structured wind-down of the program.

**Conclusion**

For the foregoing reasons, the court should deny plaintiffs' motion for a preliminary injunction.

Respectfully Submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Thomas M. Cull
THOMAS M. CULL
PATRICK JOHNSON
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-4190
(312) 371-5286
thomas.cull@usdoj.gov
patrick.johnson2@usdoj.gov

*Counsel for Defendants*