**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| AFTERSCHOOL FOR CHILDREN AND TEENS NOW (ACT NOW) COALITION and METROPOLITAN FAMILY SERVICES, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION and LINDA McMAHON, in her official capacity as Secretary, U.S. Department of Education, <br><br> *Defendants*. | Case No. 1:25-cv-15704 <br><br> Hon. Martha M. Pacold |

**PLAINTIFFS' REPLY IN SUPPORT OF
<u>PRELIMINARY INJUNCTION</u>**

Defendants' Opposition Brief ("Opp.") is remarkable for what it does not dispute, including that:

- Plaintiffs in 2024 and 2025 complied with all the requirements for grant continuation set forth in 34 C.F.R. § 75.253(a)(1)–(4) (Dkt. 48, Pls.' Mem. in Support of Mot. for Prelim. Inj. ("Mem.") at 3; Opp. at 2–3);

- Defendants' sole factual basis for non-continuation in 2026 was that Plaintiffs' 2023 grant applications contained statements regarding diversity, equity, and inclusion, with no regard to performance or other merit-based considerations  (Mem. at 8; Opp. at 8–9);

- Defendants' sole legal basis for non-continuation was their determination that, due to a purported conflict with the current Administration's "policy preferences," the grants were no longer "in the best interest of" the Government under § 75.253(a)(5), a first in their 45-year history of grant-making under that standard (Mem. at 7–8; Opp. at 7);

1

- Defendants failed to consider Plaintiffs' evidence disputing any conflict with Administration priorities, denying them their right to reconsideration set forth in § 75.253(g) (Mem. at 20–21; Opp. at 14–16; *see also* Mem. at 7–9);

- Defendants non-continued 17 other FSCS grants at the same time, on the same novel basis, another first for the Department (Mem. at 8; Opp. at 2–4);

- Absent an injunction, Plaintiffs will suffer the immediate shutdown of all FSCS programs, termination of all related contracts with schools and community partners, firing of staff both at ACT Now and at the schools, and damage to long standing relationships and goodwill (Mem. at 22–26; Opp. at 18); and

- Absent an injunction, over 19,000 students and families in 16 distressed school districts will lose critical support and services, including tutoring and after-school support, food assistance, and health and dental care—all contrary to the public interest Congress defined in statute (Mem. at 1, 25–27; Opp. at 18).

Defendants do not submit any facts or evidence in opposition to Plaintiffs' motion. Instead, they rely solely on legal arguments and cases that, as discussed below, are baseless or inapposite.

At this stage, Plaintiffs need not prove their case on the merits; rather they need only show a risk of irreparable injury and a "better than negligible" chance they will prevail on the merits. *See Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001). Plaintiffs have met that burden.

## A. Plaintiffs Have Established a Reasonable Likelihood of Success.

Defendants persist in mischaracterizing Plaintiffs' complaint and the remedies they seek. Plaintiffs agree with Defendants that Plaintiffs' initial funding award does not entitle them to future continuation awards and, because no funds have been awarded for 2026, there are no funds to

"reinstate." Opp. at 4. Indeed, the lack of a legal entitlement to such funds is fatal to Defendants' arguments that this Court lacks subject matter jurisdiction. *See* Dkt. 30, Pls.' Mem. in Opp. to Mot. to Dismiss at 11–12. Plaintiffs do not seek to enjoin the denial of funding for *any* reason; they seek to enjoin non-continuation decisions "based on extra-statutory, retroactive, or viewpoint-based criteria not authorized by Congress or disclosed through lawful rulemaking." Dkt. 1, Compl. at 26 (Prayer for Relief ¶ G).

The parties' core dispute, rather, is whether the Department may interpret its own regulations to grant itself unfettered discretion to ignore any bounds on its conduct. *Compare* Mem. at 10–22 (alleged unlawful bases) *with* Opp. at 7 ("The best-interest provision . . .permits the Department to consider the full range of government interests at the time of the continuation decision. . .").

The uncontested facts foreclose Defendants' reading. Under the relevant legal constraints on Defendants' discretion, these facts establish at least a reasonable likelihood that Defendants violated the APA and the Constitution.

### 1. Plaintiffs Are Likely to Succeed on Their APA Claims.

Plaintiffs argue that Defendants' actions violate the APA by: (a) violating their own regulations by failing to consider Plaintiffs' performance; (b) creating a new, general "anti-DEI" standard without notice and comment; (c) treating compliance with GEPA as grounds for non-continuation; and (d) failing to provide a rational explanation connecting Plaintiffs' discontinuations to the government's best interest, even under Defendants' reading of that standard. Mem. at 11–17. Defendants' responses (or lack thereof) are unavailing.

First, Defendants do not contest that they violated the APA by penalizing Plaintiffs for complying with GEPA's statutory mandate. *See* Mem. at 15 (Part 1(c)) (citing 5 U.S.C.

3

§ 706(2)(A), (C)). All applicants for Department grants must "describe in [their] application" their commitment "to ensure equitable access to, and equitable participation in" grant activities and programs and "to overcome barriers to equitable participation, including barriers based on gender, race, color, national origin, disability, and age." 20 U.S.C. § 1228a(b). The Department has no discretion to override that statutory mandate and discontinue grants that comply with Congress's command. Defendants' failure to respond to this point supports a finding of likelihood of success on this APA claim.[1]

Second, because the "best interest" standard requires consideration of grantee performance, the uncontested facts are sufficient to find that the Department violated its own regulations. Mem. at 11–12 (Part 1(a)) (citing 5 U.S.C. § 706(2)(A)). Defendants' expansive reading of the "best interest" standard, 34 C.F.R. § 75.253(a)(5), cannot survive a plain reading of the regulatory text and structure. Determining whether that standard is met—along with the four other performance-based criteria—requires considering "relevant information regarding grantee performance [that] includes" performance reports, progress measures, and "any other relevant information." 34 C.F.R. § 75.253(b). Defendants read that last phrase as freeing them from having to consider grantee performance at all. Opp. at 7–8.

The Seventh Circuit has expressly rejected that interpretation:

> A clause in a catch-all provision at the end of a list of explicit powers would be an odd place indeed to put a sweeping power to impose *any* conditions on *any* grants—a power much more significant than all of the duties and powers that precede it in the listing.

*City of Chicago v. Sessions*, 888 F.3d 272, 285 (7th Cir. 2018), *vacated on other grounds*, Nos. 17-2991 & 18-2649, 2018 WL 4268814 (7th Cir. Aug. 10, 2018); *see also City of Chicago v. Barr*,

---

[1] Defendants' discussion of GEPA is limited to its notice-and-comment requirements, which Plaintiffs reply to *infra* at 7–8. *See* Opp. at 6–8, citing Mem. at 13 (Part 1(b)).

961 F.3d 882, 886–87, at *2 (7th Cir. 2020) (summarizing procedural history). Defendants' failure to mention, let alone distinguish, this binding precedent is both telling and indicative of Plaintiffs' likelihood of success on this claim. *See Barr*, 961 F.3d at 905 (warning against the Executive's "hijacking" of legislatively established grant programs via "the broad interpretation" of a catch-all phrase "to further particular policy goals of the Executive").[2]

Third, even accepting the Department's interpretation, the Department failed to provide "a rational connection between the facts found and the choice made," rendering its actions arbitrary and capricious under 5 U.S.C. § 706(2)(A). Mem. at 15–17 (Part 1(d)) (quoting *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 567 (2025)). Defendants cut the applicable standard short, omitting the language in italics: courts must ensure that the agency "has acted within a zone of reasonableness *and, in particular, has* [1] *reasonably considered the relevant issues and* [2] *reasonably explained its decision.*" *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (emphasis added). *Compare* Opp. at 8.

The administrative record here confirms that Defendants did neither. In the Notices, the Department identified four *potential* criteria for its "best interest" determination, using "or" instead of "and" when articulating them and thereby stripping them of any explanatory power. *Washington*, 813 F. Supp. 3d at 1239 n.6 (holding that the Department's use of these criteria to terminate grants amounts to a "complete lack of explanation"). Defendants "never explain which [criteria], if any, apply to which of Plaintiffs' programs, if any," i.e., the "grounds for their decision." *Compare* Mem. at 16 and n. 6 *with* Opp. at 8. Further, because Defendants relied solely on Plaintiffs' applications, not their actual grant activities, the Department did not—indeed, could not—make

---

[2] Other courts interpreting the "best interest" standard have also rejected the Department's reading. *See, e.g.*, *Washington v. U.S. Dep't of Educ.*, 813 F. Supp. 3d 1222, 1242 (W.D. Wash. 2025) ("[N]othing in the existing regulatory scheme comports with the Department's view that multi-year grants may be discontinued whenever the political will to do so arises."), *stay denied*, 161 F.4th 1136 (9th Cir. 2025).

the factual findings needed to support non-continuation. With no relevant facts and no explained standard, Plaintiffs will likely succeed in proving that the Notices failed to "reasonably explain[]" the Department's decision. *Prometheus*, 592 U.S. at 423.

Moreover, Defendants' silence as to the Denial Letters further confirms their unlawful conduct. Mem. at 8–9. In response to Plaintiffs' Request for Reconsideration showing that the Department "identified language [that] proposes no project activities at all" and that "MFS has not used federal funds for activities that conflict with the priorities and policy preferences of the Administration," the Department merely asserted, with no discussion or analysis of the evidence Plaintiffs provided, that "the information in your request . . . was not sufficient to refute" their findings to the contrary. Dkt. 3-8, Compl. Ex. 8 at 4, 7, 11, 14. Such a conclusory rejection violates the APA's command that agencies reasonably explain their decisions. *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947).

Fourth, Defendants misunderstand Plaintiffs' argument as to notice-and-comment rulemaking. Mem. at 15–17 (Part 1(d)) (citing 5 U.S.C. § 706(2)(A), (D)). Plaintiffs do not contend that the discontinuations themselves were subject to notice-and-comment, but rather that they were made pursuant to new, generally applicable "anti-DEI" guidelines and interpretation of the "best interest" standard for which GEPA requires notice-and-comment rulemaking. *Id.*

Defendants do not contest that they adopted an anti-DEI standard to advance the Administration's priorities or that they applied that same standard to 17 other grants. Mem. at 6–10 and Exhibits 24–45. Indeed, Defendants applied the same standards to terminate entire grant programs. *See Washington v. U.S. Dep't of Educ.*, 807 F. Supp. 3d 1275, 1283–84 (W.D. Wash.). Through GEPA, Congress expressly imposed notice-and-comment requirements on such

6

"generally applicable . . . guideline[s]" and "interpretation[s] . . . affecting[] the provision of financial assistance. . ." 20 U.S.C. § 1232(a).

The undisputed record disproves Defendants' assertion that the discontinuations were merely a "routine exercise" of a "long utilized" regulation. Opp. at 1, 6–7. Plaintiffs proffered a declaration from a veteran Department attorney swearing that for at least 45 years, the Department never discontinued a grant based solely on application language or the "best interest" standard alone. Dkt. 3-3, Compl. Ex. 3, Decl. of Ron Petracca, ¶ 28. Defendants provide no evidence to the contrary.

Furthermore, when the Department in 2024 established a process for seeking reconsideration of non-continuations, the Department stated that "*In general, we do not deny a large number of non-competing continuation awards* and, if that does happen, grantees are often aware of the likelihood of the decision *well in advance. . .*" 89 Fed. Reg. 70300, 70316 (2024) (emphasis added). Because their discontinuations effected a new, generally applicable anti-DEI guideline and interpretation of the "best interest" standard, Plaintiffs are likely to succeed in showing that Defendants' failure to engage in notice-and-comment rulemaking was contrary to law under the APA.

## 2.   Plaintiffs Are Likely to Succeed on Their Constitutional Claims.

Plaintiffs argue that Defendants violated the Constitution by: (a) imposing conditions on federal spending without Congressional authority; (b) using a vague standard to subject Plaintiffs to arbitrary enforcement; (c) depriving Plaintiffs of their interest in being fairly considered; and (d) discriminating against Plaintiffs based on their DEI viewpoints. Mem. at 17–22. Defendants' response ignores binding circuit precedent and doubles down on their arrogation of congressional power.

7

Defendants rely heavily on *Dalton v. Specter*, 511 U.S. 462 (1994), to argue that Plaintiffs' constitutional claims are "foreclosed" because they "repackage" or "recast" Plaintiffs' APA claims. Opp. at 1, 9–10, 12, 14–15. *Dalton* has no bearing here: that case concerned claims and issues plainly distinguishable from those here, and its holding undermines rather than supports Defendants' argument. The *Dalton* plaintiffs did not allege constitutional violations; the Court did not reject Plaintiffs' "recast[ing]" of their claims, but rather the appellate court's ruling that every statutory violation also violates the Separation of Powers. *Dalton,* 511 U.S. at 466, 469–71. As discussed *infra*, Plaintiffs allege independent constitutional violations separate and distinct from their APA claims. The *Dalton* Court recognized that, as here, courts frequently review claims that the same governmental action violates both the APA and the Constitution. *Id.* at 474.[3]

As to Plaintiffs' Spending Clause and Separation of Powers claim, Mem. at 17–18 (Part 2(a)), binding circuit precedent absent from their brief forecloses Defendants' response. Opp. at 10–12. In *City of Chicago v. Barr,* the Seventh Circuit held that "the power to wield the purse to alter behavior rests squarely with the legislative branch" and rejected statutory interpretations "allowing [the Executive Branch] virtually unlimited authority to place conditions on grants." *Barr*, 961 F.3d at 892, 893. Defendants "strike at the heart . . . of the separation of powers," *id*. at 892, by brazenly arguing that the caselaw circumscribing Congress's sole authority to impose funding conditions leaves them free to impose whichever conditions they want. *See* Opp. at 9–10. It is unsurprising, then, that Defendants' only support for this claim is a single, out-of-circuit district court opinion, an outlier among non-continuation cases Plaintiffs have already

---

[3] In any event, the Seventh Circuit has rejected *Dalton*-based arguments against review of Executive Branch conduct and cautioned against denying appropriate relief in cases like this: "Whether deemed a statutory or a constitutional violation, the executive's usurpation of the legislature's power of the purse implicates an interest that is fundamental to our government and essential to the protection against tyranny." *Barr*, 961 F.3d at 919 (citing *Dalton*, 511 U.S. at 472).

8

distinguished from this case. Dkt. 30, Pls.' Mem. in Opp. to Mot. to Dismiss, at 14–15 (distinguishing *Bd. of Educ. for Silver Consol. Schs. v. McMahon*, 791 F. Supp. 3d 1272 (D.N.M. 2025)).

Defendants' argument that Plaintiffs seek to "lock into place the policy preferences" of prior administrations only serves to highlight the Separation of Powers violation. Opp. at 7. It is *Congress's* policy Defendants frustrate when they target multi-year grantees for past statements concerning DEI without regard to their performance. Mem. at 17–18. ("Nowhere in statute does Congress indicate that the Department may condition continued funding for five-year projects, necessarily spanning administrations, based on ideological alignment with the current occupants of the Executive Branch."). Plaintiffs are thus likely to succeed on their Spending Clause and Separation of Powers claim.[4]

As to Plaintiffs' void-for-vagueness claim, Mem. at 18–20 (Part 2(b)), Defendants do not contest that the "best interest" standard as applied to Plaintiffs "provides no discernable enforcement standard and subjected Plaintiffs to arbitrary enforcement." *Id*. at 20. Rather, they argue that such vagueness accords with the government's broader discretion when making funding decisions under "undeniably opaque" standards. Opp. at 13–14 (citing *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998)).

Again, Defendants trample the Separation of Powers. The *Finley* Court considered challenges to a *statutory* grant of discretion over federal funding. *Finley,* 524 U.S. at 572–73 (citing 20 U.S.C. § 954(d)(1)). Agencies reading *Finley* to authorize their own unconstrained funding

---

[4] The cases Defendants cite in support are wholly inapposite: *Baldwin v. Dir., Off. of Workers' Comp. Programs*, 170 F.4th 273, 283 (4th Cir. 2026) involves neither grant competitions nor the Department's regulations, and *Nat'l Juv. L. Ctr., Inc. v. Regnery*, 738 F.2d 455 (D.C. Cir. 1984), concerned plaintiffs seeking a new multi-year grant after another grant ended. Plaintiffs neither expect nor rely on indefinite funding after 2028; they seek only consideration for continuation awards within their performance period devoid of unlawful bases for denial.

9

decisions "regardless of the will of Congress," based on vague regulations they enacted and enforce, is precisely the "concentration of power [that] would allow tyranny to flourish." *Barr*, 961 F.3d at 892. Plaintiffs' void-for-vagueness claim, therefore, is likely to succeed.

As to Plaintiffs' Procedural Due Process claim, Mem. at 20–21 (Part 2(c)), Defendants again falsely assert that Plaintiffs claim an entitlement to new continuation funds, likening their grants to "ordinary" or "routine" government procurement contracts terminable at the government's convenience. *Id.* at 15–16. Plaintiffs' multi-year competitive grants, of course, are different, because there are specific bases upon which continuation determinations must be made. The comprehensive framework governing continuation awards, the Departments' longstanding practice, and Plaintiffs' earlier continuation award are the "rules or mutually explicit understandings that support [Plaintiffs'] claim of entitlement" to consideration free from unlawful bases for denial. Mem. at 20 (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)). These undisputed circumstances demonstrate far "more than an abstract need or desire" or "a unilateral expectation." Opp. at 15 (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

By failing to notify Plaintiffs of any performance or compliance issues, non-continuing their grants on short notice, and refusing to meaningfully consider their requests for reconsideration, Defendants deprived Plaintiffs of "the [regulatory] right to be fairly considered" and attendant remedies. *Evers v. Astrue*, 536 F.3d 651, 661 (7th Cir. 2008). Accordingly, Plaintiffs are likely to prevail on their Fifth Amendment Due Process claim.

As to Plaintiffs' First Amendment claims, Mem. at 21–22 (Part 2(d)), Defendants contend that (1) they need not subsidize Plaintiffs' speech and (2) Plaintiffs' grants were discontinued based on "specific grant activities . . . not plaintiff's [sic] speech." Opp. at 16–17. Neither contention is responsive. Plaintiffs do not purport to speak through their grant activities; they seek protection

10

from discrimination against the beliefs they expressed in 2023, retaliation for that speech, and conditioning future funds on censoring that expression going forward. Mem. at 21–22. And as discussed *supra*, the Department was made aware six months ago that the "identified language proposes no project activities at all." *See* Dkt. 3-8, Compl., Ex. 8, 4. For the Department to perpetuate this false assertion in its Response, with no evidentiary support, is disingenuous at best and deceptive at worst.

Defendants are also wrong as a matter of law. It is beyond dispute that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech," *Perry*, 408 U.S. at 597, even if the person "has no 'right' to a . . . governmental benefit." *Id*. This principle was recently applied to enjoin conduct like that at issue here. *See Am. Council of Learned Societies v. Nat'l Endowment for the Humanities*, No. 25-CV-3657, 2026 WL 1256545 (S.D.N.Y. May 7, 2026).[5] In *American Council*, the court permanently enjoined termination of numerous NEH grants determined to be associated with DEI and "other subject matter that the Trump Administration regarded as inconsistent with its priorities. *Id*. at *1. The court held that DEI is a "viewpoint" for First Amendment purposes (relying on *Thakur v. Trump*, 163 F.4th 1198, 1206 (9th Cir. 2025)), and that using DEI as a basis for terminating previously awarded funds constituted "viewpoint discrimination in its most 'blatant' form," *id.* at *52.[6]

---

[5] Defendants do not mention the *American Council* decision, issued after ACT Now's Motion and two weeks before Defendants filed their opposition brief.

[6] In addition to the relevant First Amendment ruling, the *American Council* court also addressed and rejected the jurisdictional challenge Defendants have raised here. *Am. Council*, 2026 WL 1256545, at *19–20; *see also id*. at *22 ("[T]he possibility that funds may ultimately have to be disbursed to Plaintiffs if they prevail does not control the jurisdictional analysis . . . . Here, a judgment for Plaintiffs would set aside allegedly unconstitutional government action; it would not itself award compensatory damages or require payment of sums presently due." (citations omitted)).

11

This case requires the same result. Here, the Department discontinued Plaintiffs' and 17 other FSCS grants because their applications contained positive statements about diversity, equity, and inclusion. Such viewpoint discrimination is "presumptively unconstitutional." *Id.* (quoting *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 829–30 (1995)). The federal government has no discretion to "condition[ ] funding decisions on the expression or suppression of ideas." *Id.* at *41 (citing *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013)). That is precisely what happened here. Plaintiffs are thus likely to succeed on their First Amendment claims.

**B. Plaintiffs Have Established that Irreparable Harm, the Balance of Equities, and the Public Interest Warrant Preliminary Relief.**

As noted above, Defendants do not address, let alone dispute, the facts and evidence establishing irreparable harm absent an injunction. *See* Mem. at 22–26. Their only response—that a hypothetical future disbursement of funds would "solve plaintiffs' purported injuries," Opp. at 18—ignores Plaintiffs' evidence to the contrary: "[e]ven if funding were later restored, the programs would not simply return to their prior state but would instead need to be rebuilt from the ground up," which "would take months or years." *Compare* Opp. at 18 *with* Mem. at 25 (supporting citations omitted).

Without a preliminary injunction, all FSCS programs and services would still be shut down after June 30. Tens of thousands of Illinois students will permanently lose critically needed tutoring, college and career readiness support, mental and behavioral health services, food, housing, and transportation assistance. Mem. at 24–25 (supporting citations omitted). All related contracts would be terminated, as would program staff both at ACT Now and the participating schools. *Id.* at 22, 25 (supporting citations omitted). Longstanding relationships and goodwill, already under strain, would be irreparably damaged. *Id*. at 22–25 (supporting citations omitted).

12

Defendants do not explain how hypothetical funds months or years later would redress these injuries at all.

Defendants likewise do not respond to Plaintiffs' showing that both the balance of equities and the public interest overwhelmingly favor Plaintiffs. Mem. at 26–27. Defendants only respond that "the Department *may* incur *some* irreparable harm if it cannot recoup this money." Opp. at 18 (emphasis added). If such a future "harm" were to occur, it would be far outweighed by the immediate, irreparable harm that Act Now and the 19,000 students it serves will suffer without preliminary injunctive relief.

**Conclusion**

For all the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted.

13

Dated: June 1, 2026

/s/ *Jocelyn Skinner*

Jocelyn (Josie) E. Skinner (*pro hac vice*)
Emily K. Merolli (*pro hac vice*)
SLIGO LAW GROUP, PLLC
1717 K St. NW, Suite 900
Washington, DC 20006
Telephone: (202) 888-2084
josie@sligolawgroup.com
emily@sligolawgroup.com

/s/ *Scott C. Solberg*

Scott C. Solberg (No. 6204487)
Alec Solotorovsky (No. 6297666)
Elizabeth M. Hady (No. 6316542)
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Facsimile: (312) 692-1718
ssolberg@eimerstahl.com
asolotorovsky@eimerstahl.com
ehady@eimerstahl.com

Respectfully submitted,

/s/ *Aneel Chablani*

Aneel L. Chablani (No. 6242658)
Beatriz A. Diaz-Pollack (No. 6274809)
Michael R. Ortega (No. 6339469)
CHICAGO LAWYERS' COMMITTEE
FOR CIVIL RIGHTS
25 E. Washington St., Suite 1300
Chicago, IL 60602
Telephone: (312) 630-9744
Facsimile: (312) 630-1127
achablani@clccrul.org
bdiaz-pollack@clccrul.org
mortega@clccrul.org

*Attorneys for Plaintiffs*
*Afterschool for Children and Teens*
*Now (ACT Now) Coalition and*
*Metropolitan Family Services*

14