**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AFTERSCHOOL FOR CHILDREN AND TEENS NOW (ACT NOW) COALITION and METROPOLITAN FAMILY SERVICES, | |
| Plaintiffs, | Case No. 25-cv-15704 |
| v. | |
| U.S. DEPARTMENT OF EDUCATION and LINDA MCMAHON, in her official capacity as Secretary, U.S. Department of Education, | Hon. Martha M. Pacold |
| Defendants. | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM**
**IN OPPOSITION TO MOTION TO DISMISS**

This Court asked for supplemental briefing on two topics: (1) whether it has jurisdiction over Plaintiffs' First Amendment claims, *see* Dkt. 72; and (2) whether this Court retains jurisdiction to rule on Defendants' motion to dismiss pending Plaintiffs' appeal of this Court's denial of their motion for a preliminary injunction, *see* Dkt. 73. The answer to both is yes. This Court has jurisdiction over Plaintiffs' First Amendment claims, and this Court has jurisdiction to rule on the motion to dismiss.

## I. The Court Has Jurisdiction over Plaintiffs' First Amendment Claims.

This Court's jurisdiction over Plaintiffs' First Amendment claims is clear. Under 28 U.S.C. § 1331, "the district courts shall have original jurisdiction of all civil actions arising under the Constitution . . . of the United States." Whether a claim "aris[es] under" the Constitution "must be determined from what necessarily appears in the plaintiff's statement of his own claim. . ." *City of Chicago v. Comcast Cable Holdings, LLC*, 384 F.3d 901, 904 (7th Cir. 2004) (quoting *Taylor*

*v. Anderson*, 234 U.S. 74, 75–76 (1914)). Here, Counts VII and VIII of the Complaint both state claims under the First Amendment.

Count VII alleges that Defendants retaliated against Plaintiffs in violation of the First Amendment when they discontinued Plaintiffs' grant funding because of certain statements made in the grant application that the current Administration disfavors. *See* Dkt. 1 at ¶¶ 98–106; *see also id.* at ¶ 104 (alleging that "the Department relied on Plaintiffs' expressive statements regarding its overarching values and principles as evidence that continuation funding was not in the 'best interest of the Federal Government'"). Count VIII alleges that Defendants imposed an unconstitutional condition on their exercise of free speech in violation of the First Amendment when they withheld Plaintiffs' continued receipt of grant funds as a punishment for making certain disfavored statements in their grant application. *Id.* at ¶¶ 107–13; *see also id.* at ¶ 112 ("By conditioning continuation funding on whether Plaintiffs' previously approved applications align with the current Administration's preferred viewpoints, the Department penalized Plaintiffs for protected speech and imposed unconstitutional conditions on the receipt of federal funds."). Plaintiffs' statement of their own claims thus makes clear that they are seeking relief under the First Amendment, and "[i]t is clear that 28 U.S.C. § 1331 gives federal courts jurisdiction to hear constitutional claims such as…First Amendment claim[s]." *Massey v. Helman*, 196 F.3d 727, 737–38 (7th Cir. 1999); *see also Jackson v. Vill. of W. Springs*, No. 14 C 3414, 2014 WL 5543844, at *4 (N.D. Ill. Nov. 3, 2014) ("[T]here is no doubt that federal courts generally have jurisdiction over First Amendment claims.").

Defendants' supplemental brief recycles the same arguments as before, i.e., that Plaintiffs' claims are contract claims in disguise that must be brought in the Court of Federal Claims pursuant to the Tucker Act. Now that this Court has unequivocally resolved the first prong of the *Megapulse*

test in Plaintiffs' favor,[1] Defendants are left only with the second factor: whether "the type of relief sought (or appropriate)" is contractual. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). The answer is no. Plaintiffs can *only* seek equitable relief as a remedy against the Federal Government for violating the First Amendment. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). Plaintiffs' relief under the First Amendment is thus necessarily equitable in nature; only equitable relief can appropriately vindicate Plaintiffs' rights. *Chicago Women in Trades v. Trump*, 778 F. Supp. 3d 959, 982 (N.D. Ill. 2025) ("[O]nly the equitable relief of enjoining the government from enforcing the [challenged grant provision] can prevent harms such as chilled speech, a harm that monetary remedies are insufficient to address."). With no remedy at law, Plaintiffs are left with only equitable relief, which the Court of Federal Claims cannot award. *Richardson v. Morris*, 409 U.S. 464, 465 (1973) ("[T]he Court of Claims has no power to grant equitable relief." (citing *Glidden Co. v. Zdanok*, 370 U.S. 530, 557 (1962)).

Moreover, the Court of Federal Claims cannot hear Plaintiffs' First Amendment claims at all for the additional reason that "the absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act." *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc); *see also id.* ("If the [Court of Federal Claims'] conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction[.]"). "There cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act." *Tootle v. Sec'y of Navy*, 446 F.3d 167, 177 (D.C. Cir. 2006) (citing *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996)). And the Federal Circuit has

---

[1] In its order granting in part and continuing in part Defendants' motion to dismiss, this Court concluded, "[t]he source of the rights plaintiffs assert in Count VII are not contractual," and "[a]ny First Amendment right against the alleged conditions placed upon plaintiffs [Count VIII] is not dependent on the contract's terms or a contractual relationship." Dkt. 60 at 28; *see also* Dkt. 62 at 6 ("The rights plaintiffs assert are not contractual—plaintiffs assert some constitutional rights which are truly independent of any contractual arrangement.").

long held that because "the literal terms of the first amendment neither explicitly nor implicitly obligate the federal government to pay damages," the First Amendment "standing alone, cannot be so interpreted to command the payment of money." *United States v. Connolly*, 716 F.2d 882, 887–88 (Fed. Cir. 1983) (citations omitted). Thus, because the Court of Federal Claims can neither hear Plaintiffs' claims nor grant appropriate relief, the Tucker Act does not displace this Court's § 1331 jurisdiction over Plaintiffs' First Amendment claims.

Plaintiffs have explained repeatedly why the relief they seek is equitable and properly adjudicated in this Court. Plaintiffs allege that Defendants retaliated against them because of their viewpoints. *See* Dkt. 1 at ¶¶ 98–113. Plaintiffs seek to enjoin that action, which took the form of a notice of non-continuation. Status Hr'g Tr. at 3:9–10, 18–19 ("[T]he requested relief…would be…enter[ing] an order enjoining the Department from enforcing the challenged non-continuance[.]"). To remedy that harm, Defendants must be prevented from enforcing, i.e., effectuating, that unlawful notice. *Id*. at 8:18–19 ("[W]e're asking for the decision that was made on these unconstitutional grounds to be done [on] lawful grounds[.]"). Such a remedy does not necessarily mean that Plaintiffs will be entitled to a continuation award; Plaintiffs have always maintained and explained that the regulations do not guarantee them such an award. MTD Hr'g Tr. at 16:11–13 (The grant agreements "explicitly reference the facts in the regulation that continuation funding is not guaranteed or promised. So there's no legal entitlement to future funding awards based on those grant agreements.");[2] *see also* 34 C.F.R. § 75.251. What Plaintiffs are entitled to, however, is enjoinment of a violation of their First Amendment rights, which here

[2] Put another way, Plaintiffs cannot be seeking to enforce a contract because there is no contract. MTD Hr'g Tr. at 11:10–13 ("Because these funds were non-continued before the year in question, 2026, there is no grant agreement promising funding for 2026, and, therefore, no money mandating source of plaintiffs' claims."); Status Hr'g Tr. at 12:8–11 ("There's nothing that we could take even to the Court of Federal Claims to have them review because there has not been a continuation award made for 2026."); PI Hr'g Tr. at 148:6–7 ("[T]here's no 2026 funding award to reinstate."); *id.* at 161:15–16 ("[T]here are no 2026 funds to reinstate.").

means that Defendants cannot rely on their unlawful notices. PI Hr'g Tr. at 109:3–7 ("[W]e're asking for…the Court [to] order the Department to…consider plaintiffs for continuation according to the lawful standards[.]").

Plaintiffs believe that if the Department were to review them for continuation under the applicable legal standards, the Department would continue Plaintiffs' grants. While that may result in the release of funding downstream, as this Court recognized, such a downstream effect does not transform equitable relief into legal relief. Dkt. 60 at 24 ("[T]he mere fact that an injunction would require the same governmental restraint that specific (non)performance might require in a contract setting is an insufficient basis to deny a district court the jurisdiction otherwise available and the remedial powers otherwise appropriate." (quoting *Megapulse*, 672 F.2d at 971)). Indeed, Defendants remain free to issue a new non-continuation notice, assuming they can find a reason to justify non-continuation that does not violate Plaintiffs' rights. PI Hr'g Tr. at 109:9–12 ("[E]ven if we win all of the relief here, we would still need to go to the Department, and the Department would have to conduct a continuation determination according to the lawful standards.").

Even if Plaintiffs' requested relief could be characterized as contractual (it cannot), the Tucker Act still would not apply under the *Megapulse* framework. That's because the *Megapulse* test is conjunctive: whether an action is "'at its essence' a contract action depends *both* on the source of the rights upon which the plaintiff bases its claims, *and* upon the type of relief sought." *Megapulse*, 672 F.2d at 968 (emphasis added); *see also Am. Council of Learned Societies v. NEH*, 2026 WL 1256545, at *20 (S.D.N.Y. May 7, 2026) ("Both considerations must point toward a contract-based claim before the Tucker Act divests a district court of jurisdiction."). Having concluded that "[t]he rights plaintiffs assert are not contractual," Dkt. 62 at 2, *Megapulse* forecloses treating Plaintiffs' claims as contract claims. And, on resolving splits generally, courts

treat the source-of-rights factor as controlling. *See Am. Bar Assoc. v. U.S. Dep't of Justice*, 783 F. Supp. 3d 236, 245 (D.D.C. 2025) ("[E]ven if the relief sought were characterized as contractual in nature, that alone is not enough to bring the claim within the scope of the Tucker Act given that the [plaintiff's] First Amendment claim has an independent source.") (citations omitted)); *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619–20 (D.C. Cir. 2017) (concluding that source-of-rights factor controlled where type of relief sought did "not further illuminate whether their claims are essentially contractual").

In answer to the Court's first question: this Court has jurisdiction over Plaintiffs' First Amendment claims.

## II. The Court Has Jurisdiction to Rule on the Motion to Dismiss While Plaintiffs' Appeal of the Preliminary Injunction Order Is Pending.

"As a general matter, a notice of appeal 'divests the district court of its control over those aspects of the case involved in the appeal.'" *May v. Sheahan*, 226 F.3d 876, 879 (7th Cir. 2000) (quoting *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 58 (1982)). "Under this rule, the district court retains jurisdiction to act only if the order being appealed or the proceeding before the district court is a discrete matter ancillary to the issues under consideration in the other court." *Id*. (citing *Kusay v. United States*, 62 F.3d 192, 193–94 (7th Cir. 1995)). For matters unrelated to the pending appeal, "[t]he district court has authority to proceed forward[.]" *Id*. at 880 n.2.

On July 13, 2026, Plaintiffs appealed this Court's denial of their motion for a preliminary injunction as to Counts VII and VIII. Dkt. 59, 66. However, Plaintiffs' appeal does not divest this Court of jurisdiction to rule on the motion to dismiss, which remains pending before this Court, because the appeal and the motion present discrete, unrelated matters. The appeal challenges this Court's conclusion that Plaintiffs are unlikely to succeed on the merits of their First Amendment claims, whereas the motion to dismiss challenges this Court's subject-matter jurisdiction over

those claims. Plaintiffs expressly disclaimed raising any jurisdictional arguments in their appeal brief, and reserved the right to do so later, based on this Court's finding that Plaintiffs' "likelihood of success on jurisdiction is ultimately irrelevant to the propriety of a preliminary injunction." Dkt. 62 at 4 n.2; *see also Afterschool for Children and Teens (ACT) Now v. Dep't of Ed.*, No. 26-2473 ("Appeal"), Dkt. 19 at 1 n.1. Likewise, Defendants did not raise any jurisdictional arguments in their response brief. Appeal Dkt. 25. Thus, because the pending motion to dismiss presents a discrete issue unrelated to the appeal, this Court retains jurisdiction to rule on the motion. *See Temple, Inc. v. Texas Health & Human Servs. Comm'n*, 79 F.4th 512, 514 (5th Cir. 2023) (holding that district court retained jurisdiction to rule on motion to dismiss for lack of jurisdiction despite pending preliminary injunction appeal); *Chalamalesetty v. Jaddou*, No. 4:22-CV-3182, 2023 WL 6387976, at *2 n.2 (D. Neb. Sept. 29, 2023) (explaining why Supreme Court's decision in *Coinbase* does not preclude it from ruling on motion to dismiss for lack of jurisdiction while a preliminary injunction appeal is pending); *Protect Our Parks, Inc. v. Buttigieg*, No. 21-CV-2006, 2022 WL 910641, at *2 n.4 (N.D. Ill. Mar. 29, 2022) ("Of course, this Court retains jurisdiction to decide Defendants' motion to dismiss notwithstanding the pending preliminary injunction appeal." (citations omitted)).

The Supreme Court's decision in *Coinbase, Inc. v. Bielski,* 599 U.S. 736 (2023), does not warrant a different result. In that case, the Supreme Court applied the *Griggs* principle and concluded that the district court was divested of jurisdiction pending an appeal of a motion to compel arbitration because the appellate court's ruling would essentially resolve the entire case. *Id.* at 741; *accord May*, 226 F.3d at 879–81 (applying *Griggs* principle to divest the district court of jurisdiction over claims against a defendant public official pending an interlocutory appeal challenging the denial of qualified immunity). That is not the case here. The Seventh Circuit's

ruling on the denial of the motion for a preliminary injunction will not resolve the issue raised in the motion to dismiss—whether this Court has jurisdiction over Plaintiffs' First Amendment claims. The Supreme Court in *Coinbase* did not disturb the underlying premise of *Griggs* that the district court may still proceed with matters that are not involved in the appeal.

In answer to the Court's second question: this Court retains jurisdiction to rule on the motion to dismiss.

## III. Conclusion

For the foregoing reasons, as well as those made in their briefing, notices of supplemental authority, and oral arguments, Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss.

Dated: September 10, 2026

Respectfully submitted,

/s/ *Jocelyn Skinner*
Jocelyn (Josie) E. Skinner*
Emily K. Merolli*
SLIGO LAW GROUP, PLLC
1629 K St. NW, suite 300
Washington, DC 20006
Tel: (202) 888-2084
josie@sligolawgroup.com
emily@sligolawgroup.com

/s/ *Scott C. Solberg*
Scott C. Solberg (No. 6204487)
Alec Solotorovsky (No. 6297666)
Elizabeth M. Hady (No. 6316542)
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718
ssolberg@eimerstahl.com
asolotorovsky@eimerstahl.com
ehady@eimerstahl.com

/s/ *Aneel Chablani*
Aneel L. Chablani (No. 6242658)
Michael R. Ortega (No. 6339469)
CHICAGO LAWYERS' COMMITTEE FOR CIVIL RIGHTS
25 E. Washington St., Suite 1300
Chicago, IL 60602
Telephone: (212) 630-9744
Fax: (312) 630-1127
achablani@clccrul.org
mortega@clccrul.org

*Attorneys for Plaintiffs Afterschool for Children and Teens (ACT) Now Coalition and Metropolitan Family Services*

**Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of Plaintiffs' Supplemental Memorandum in Opposition to Motion Dismiss was served on all counsel of record on this 10th day of September, 2026 via the Court's ECF system.

/s/ *Scott C. Solberg*
Scott C. Solberg